**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

IRA HOLTZMAN, individually and as the )
representative of a class of similarly-situated )
persons, )
           )  No. 08 C 2014
        Plaintiff, )  Judge Gettlemen
           )  Magistrate Judge Schenkier
     v. )
           )
GREGORY P. TURZA, )
           )
       Defendant. )

## PLAINTIFF'S MOTION TO RECONSIDER AND TO VACATE ORDER OF DISMISSAL ENTERED ON APRIL 24, 2008

NOW COMES the Plaintiff, IRA HOLTZMAN, by and through his attorneys, and moves to reconsider the entry of the Order of Dismissal entered on April 24, 2008 and to vacate the Order of April 24, 2008 dismissing this case, in support thereof alleges and states as follows:

### INTRODUCTION

Plaintiff filed a putative class action law suit for damages under the Telephone Consumer Protection Act. The suit was filed in the Circuit Court of Cook County on November 8, 2007. Defendant was served with an Alias Summons on or about March 12, 2008. On or about April 7, 2008 the Circuit Court of Cook County set the initial status and case management for this case on April 25, 2008. Two days later, on April 9, 2008, Defendant filed a Notice of Removal which transferred this case to this Court. Plaintiff's counsel promptly filed their appearances with this Court on April 9, 2008 after learning of the removal. Plaintiff also filed a Notice of Voluntary Dismissal of Counts II and III on April 15, 2008.

Defendant filed his Motion to Dismiss brought pursuant to FRCP 12(B)(6) and noticed same for April 24, 2008. On April 24, 2008, Defendant presented its Motion to Dismiss. This

Court granted the Motion to Dismiss.  Plaintiff's counsel was not present on that date as its

docketing system had the case scheduled for the following day (based on the case management

set in state court for April 25, 2008 at 9:30 a.m. in Chancery Court Room 2405).

### I.  PLAINTIFF REQUESTS THAT THE ORDER DISMISSING THIS VACATED DUE TO EXCUSABLE NEGLECT BY ITS COUNSEL.

On or about April 29, 2008 Plaintiff's counsel ordered a transcript of the hearing from

this Court's court reporter.  Plaintiff's counsel does not yet have a transcript of the proceeding

and does not know the basis of the dismissal entered by the Court.  Plaintiff's counsel has been

advised by Defendant's counsel that this Court agreed with the Defendant's argument that the

facsimile sent to Plaintiff attached to its complaint as Exhibit A was not an advertisement as

defined by the Telephone Consumer Protection Act.

Plaintiff desires to be heard on this issue and requests an opportunity to submit its brief to

the Court.

Plaintiff requests that it be given the opportunity to have this case decided on the merits.

This Court should have the benefit of Plaintiff's arguments since no 7th Circuit precedent exists

to assist this trial court in the construction of Telephone Consumer Protection Act and what

constitutes an advertisement.

Plaintiff's proposed response is attached hereto as Exhibit A.  Plaintiff requests that the

order of April 24, 2008 be vacated and that Plaintiff be granted leave to file his Response in

Opposition to Defendant's Motion to Dismiss, that a date for reply be set along with a ruling

date.

### CONCLUSION

For all the reasons set forth above, Plaintiff request this Court vacate the Order of

Dismissal entered on April 24, 2008 pursuant to FRCP 60, that it be given leave to file his

Response in Opposition *instanter,* that a reply date and ruling date be entered on Defendant's

Motion to Dismiss.

Respectfully submitted,

IRA HOLTZMAN, individually and as the
representative of a class of similarly-situated
persons

By:    s/Brian J. Wanca
       One of Plaintiff's Attorneys

Brian J. Wanca                          Phillip A. Bock
ANDERSON + WANCA                        BOCK & HATCH, LLC
3701 Algonquin Road, Suite 760          134 N. LaSalle Street, Suite 1000
Rolling Meadows, IL  60008              Chicago, IL  60602
Telephone:  847/368-1500                Telephone:  312/658-5500

STATE OF ILLINOIS      )
                      ) ss

COUNTY OF COOK     )

<u>VERIFICATION</u>

I, Brian J. Wanca, being first duly sworn on oath, depose and state that I am Plaintiff's attorney in the above-captioned matter, that I have read the foregoing Plaintiff's Motion to Reconsider and to Vacate Order of Dismissal Entered on April 24, 2008 and find that the statements stated therein are true and correct, except to those matters alleged on information and belief which, to the best of my knowledge, information and belief, are true and correct.

_____
Brian J. Wanca

SUBSCRIBED and SWORN to before
me this 2nd day of May, 2008

_____
Notary Public

```
OFFICIAL SEAL
SUSAN M FITZGERALD
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:08/12/11
```

4

## CERTIFICATE OF SERVICE

I hereby certify that on May __2__, 2008, I electronically filed this Motion to Reconsider and to Vacate Order of Dismissal Entered on April 24, 2008 with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following attorneys:

Molly Anne Arranz at:
marranz@osalaw.com

Eric L. Samore at:
esamore@osalaw.com

Darren P. Grady at:
dgrady@salaw.com


s/Brian J. Wanca
Brian J. Wanca
Attorney for Plaintiff


Brian J. Wanca
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL  60008
Telephone: 847/368-1500

Phillip A. Bock
BOCK & HATCH, LLC
134 N. LaSalle Street, Suite 1000
Chicago, IL  60602
Telephone:  312/658-5500

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IRA HOLTZMAN, individually and as the representative of a class of similarly-situated persons, | ) ) ) | |
| | ) | No. 08 C 2014 |
| Plaintiff, | ) | Judge Gettleman |
| | ) | Magistrate Judge Schenkier |
| v. | ) | |
| | ) | |
| GREGORY P. TURZA, | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

Plaintiff, IRA HOLTZMAN, responds as follows to the Motion to Dismiss filed by Defendant, GREGORY P. TURZA.

## INTRODUCTION

Defendant faxed an advertisement to Plaintiff's fax machine without first obtaining Plaintiff's express permission or invitation. Plaintiff's Class Action Complaint alleges Defendant's violations of the federal Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 (Count I), common law conversion of paper, toner and employee time (Count II), and unfair practice prohibited by the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 ("ICFA") (Count III).[1] On April 9, 2008, Defendant removed this case from State court alleging federal question jurisdiction and citing *Brill v. Countrywide Home Loans*, 427 F.3d 446 (7th Cir. 2005). Doc. 1 at ¶ 4.

Defendant has moved for dismissal pursuant to Rule 12(b)(6), arguing that Plaintiff's TCPA claim fails to state a claim upon which relief may be granted. Defendant argues that his

---

[1] Plaintiff voluntarily dismissed Counts II and III and, therefore, Defendant's Motion to Dismiss those counts is moot.

fax to Plaintiff—Exhibit A to the Complaint—is not an "advertisement" because the fax did not

advertise Defendant's "property, goods, or services."  Defendant is incorrect.  The TCPA defines

"advertisement" as "any material advertising the commercial availability or quality of any

property, goods, or services…." 47 U.S.C. 227(a)(5).  Because Defendant's fax to Plaintiff

advertises the "availability or quality" of Defendant's legal services of "estate planning," "post

mortem administration," and "business succession planning," the fax is an "advertisement" and

the Court should deny Defendant's motion.

## ARGUMENT

## I.    DEFENDANT'S FAX IS AN ADVERTISEMENT.

Defendant argues that his fax was not an "advertisement."  The fax attached to Plaintiff's

Complaint as Exhibit A is attached here as Exhibit A.  The TCPA broadly defines

"advertisement" as "any material advertising the commercial availability or quality of any

property, goods, or services…." 47 U.S.C. 227(a)(5).  Plaintiff alleges that Defendant's fax is an

"advertisement."  ¶¶ 21, 24.  Defendant's fax advertised the availability or quality of Defendant's

legal services of "estate planning," "post mortem administration," and "business succession

planning."  Defendant's fax advertised that Defendant's services are *available* for Plaintiff and

other recipients.  Therefore, it was an "advertisement."

Moreover, upon information and belief, Defendant contracted with a well-known junk

fax broadcaster named Top of Mind Awareness, LLC ("Top of Mind").  Upon information and

belief, this company created Defendant's fax and sent it to Plaintiff and others on Defendant's

behalf.  According to Top of Mind, the "Daily Plan-It" is a one-page fax that will "increase the

effectiveness of [Defendant's] marketing and produce more referrals."  True and correct copies

of pages printed from www.topofmind.org are attached hereto as Exhibit B.  Top of Mind

guarantees through its "Five Year Promise" that the fax will create new business or it will refund

all money paid.  Exhibit B.

According to a Top of Mind subscriber, "The Daily Plan-it keeps referral sources thinking about my firm and reinforces us as a 'go to resource' for info and solutions.  It is effortless and has more than paid for itself in client referrals."  Exhibit B.

### A.    The Court should broadly construe the TCPA's definition of "advertisement."

Because the TCPA is a remedial statute, the Court should broadly, not narrowly, construe the TCPA's definition of "advertisement."  *See, e.g., Kenro, Inc. v. Fax Daily, Inc.,* 962 F. Supp 1162, 1167 (S.D. Ind. 1997); *Texas v. American Blast Fax, Inc.,* 121 F. Supp. 2d 1085, 1091 (W.D. Tx. 2000).  "Remedial statues should be liberally construed and interpreted (when that is possible) in a manner tending to discourage attempted evasions by wrongdoers."  *Scarborough v. Atlantic Coast Line,* 178 F.2d 253, 258 (4th Cir. 1950); *see also Sachs v. Ohio Nat. Life Ins.,* 131 F.2d 134, 137 (7th Cir. 1942) ("remedial statutes should be liberally construed, so as to prevent destruction of the purpose of the legislation").  Exemptions from remedial statutes "are to be construed narrowly to limit exemption eligibility."  *Hobar Agua y Vida en el Desierto, Inc. v. Suarez-Medina,* 36 F.3d 177, 182 (1st Cir. 1994); *see also EEOC v. City of Janesville,* 630 F.2d 1254, 1258 (7th Cir. 1980) ("an exemption to a remedial statute must be narrowly construed").

### B.    Defendant's fax is an "advertisement."

Defendant argues his fax was not an "advertisement," because "the document at issue is a newsletter or news article that provides information to its recipients." Mot. at p.2.  The FCC's implementing regulations explain that the term "advertisement" is broad.  *IN RE MATTER OF RULES & REGS. IMPLEMENTING THE TEL. CONSUMER PROTECTION ACT OF 1991 AND THE JUNK FAX PREVENTION ACT OF 2005,* 2006 WL 901720, 21 F.C.C.R. 3787, at 3814-15 (April 6, 2006).

Here, Defendant's fax advertised that Defendant's law services are *available* to Plaintiff

and other recipients.  On November 1, 2007, Plaintiff received an unsolicited fax from Defendant

offering Plaintiff the "opportunity" to contact Defendant about Defendant's law services.

Defendant's fax is part of that marketing effort because the fax contains Defendant's address

(Concourse Plaza, 4711 Golf Road, suite 550, Skokie, Illinois, 60076), telephone number

(847/674-0200), fax number, (847/674-9115), e-mail address, (greg@myestateplan.net), and

website address (www.myestateplan.net).  This information is designed to induce the recipient to

contact Defendant about his law services in the hopes to create business.  The "news" contained

elsewhere on the fax is simply a pretext so that Defendant could advertise its law services and

then claim the junk fax was informational rather than advertising.  The fax is an "advertisement."

### C.    Other Courts Have Broadly Interpreted The TCPA's Definition of "Advertisement."

Faxes that have the effect and purpose of advertising services, property, or goods—

whether directly or indirectly—violate the TCPA.  *See Rudgayzer & Gratt v. Enine, Inc.*, 2004

WL 877852 (N.Y. App. Apr. 14, 2004) (Exhibit C).  *Rudgayzer* held that an unsolicited fax

identifying the defendant's company name and contact information was an unsolicited

advertisement within the meaning of the TCPA.  *Id*. at *8.  The fax did not expressly invite

recipients to buy services, but the New York court reasoned that the fax had the purpose and

effect of influencing fax recipients to buy the services mentioned by associating the defendant

with the services.  *Id*. at *7-8.  The court held that if a fax "pitches a product or service under the

guise of providing information about it" then it is an "advertisement."  *Id*. at *8.

In *Schumacher Fin. Svcs., Inc. v. Steckelberg,* No.: 03 AC-8706 Y CV (Mo. Cir. Ct., Oct.

14, 2003) (Exhibit D), the Missouri trial court noted that Webster's dictionary defines

"advertise" as "to make something known; to notify," and the court stated that, to be an

"advertisement" under the TCPA, a fax "need only make known to, or notify, someone about the

commercial availability of any property, goods or services." *Id*. at * 5.  The court explained:

> It is hard to miss the numerous solicitations any professional or business person receives for similar industry reports in business areas such as tax planning, marketing assistance, and general business advice.  While many are fee-based, some are also offered at no charge as in the fax at issue here.  The Court concludes that whether a fee is or is not charged is irrelevant for purposes of the TCPA.  Indeed, a report such as this may be offered for free in one location on one day, and then the very same report may be offered for a fee in a different location on a different date, much like a new hardware store may give away items such as a garden hose during a grand opening sale, and then charge for the same garden hose the next day.  This does not change the character of the item and make it a "product" on one day, and not on the other.
>
>           * * *
>
> The fax in this case does "notify" the recipients about both the existence of the report and Defendant's business.  Thus, the question is reduced to whether the report or any portion thereof constitutes "property, goods or services."  The Court holds that the report is a product offered by Defendant.  [*Schumacher,* at *5-*6.]

In *Micro Engineering v. St Louis Ass'n of Credit Mgmt., Inc.,* No. 02 AC 8238 X CV

(Mo. Cir. Ct., Aug. 13, 2002) (Exhibit E), the Missouri trial court held that the fax advertising a

"free" seminar was an "advertisement" under the TCPA.  The court held, "These faxes clearly do

'announce' the luncheons defendant offers.  It is clear that such professional functions are

offered as a service, albeit ostensibly a free service." *Id.* at p.4.

Finally, in *Harjoe v. Colonial Life & Accident Ins. Co.,* No. 02 CC-1983, at p.3 (Mo. Cir.

Ct. Aug. 29, 2002) (Exhibit F), a Missouri trial court held that faxes about the availability of

commercial insurance were "advertisements."  The court noted, "Defendant argues that nothing

is being offered 'for sale' by the faxes." *Id.* at *3.  "But there is no requirement that to be

covered by the statute, that the goods or services advertised actually must be for sale to the

recipient." *Id.*  "They only have to be 'advertised.'" *Id.*  "Defendant is clearly engaged in a

commercial insurance business, and the fax in question does notify the recipient about the

existence of Defendant's insurance wares and their commercial availability." *Id.* at *3-*4.

These trial court opinions are not binding on this Court, but they contain persuasive

analyses of the "advertisement" issue.

### D.    Defendant's Trial Court Opinions Are Factually Distinct And Not On Point.

Defendant primarily relies upon two cases. *Ameriguard, Inc. v. University of Kansas Medical Center Research*, 2006 WL 1766812 (W.D. Mo. June 23, 2006); and *Phillips Randolph Enterprises, LLC v. Adler-Weiner Research Chicago*, 2007 WL 293928 (N.D. Ill 2007) (Bucklo, J.). Neither case supports dismissal here.

First, the fax at issue in *Ameriguard* was not an advertisement because it was used solely for the promotion of medical research. The fax sought participants for a clinical research trial for the "prevention of diabetes." *Ameriguard*, 2006 WL 1766812, at *1. The fax provided general information about diabetes and "Pre-Diabetes," announced a clinical research trial, and stated that "[p]articipants who qualify receive study related medical care, study medication and diet and exercise counseling at no cost. Participants will also receive compensation for their time and travel." *Id.* at * 1. The district court found that, as a matter of law, the fax was non-commercial. *Id* at * 2. In contrast to the fax at issue in *Ameriguard*, Defendant's fax had a commercial nature because Defendant advertised the availability of his law services of "estate planning," "post mortem administration," and "business succession planning." Defendant solicited the recipients to purchase services from his law firm.

Second, the fax at issue in *Phillips Randolph* invited the recipients "to participate in a research discussion on the topic of a new healthcare program by the Chicagoland Chamber of Commerce." 2007 WL 293928 at *4. The court held that the fax was not an "advertisement." "On its face, the fax does not promote a 'commercially available service,' but a research study." *Id*. at *2. Unlike the *Phillips Randolph* fax promoting a research study, Defendant's fax advertised "commercially available" law service products, such as "estate planning," post mortem administration," and "business succession planning" and sought to induce a business

relationship with Plaintiff and others.  Defendant's fax was an "advertisement."

## **CONCLUSION**

For all these reasons, the Court should deny Defendant's Motion to Dismiss.


Respectfully submitted,



By:     _____
        One of Plaintiff's attorneys

Brian J. Wanca                          Phillip A. Bock
Ryan M. Kelly                           BOCK & HATCH, LLC
ANDERSON + WANCA                        134 N. La Salle St., Suite 1000
3701 Algonquin Road, Suite 760          Chicago, IL  60602
Rolling Meadows, IL  60008              Telephone:  312/658-5000
Telephone:  847/368-1500

Deliver to: Ira Holtzman

# The "Daily Plan-It™"

### *GREGORY P. TURZA, JD*

**Volume 9, Issue 22**

11/1/2007

## You *Can* Take it With You:
## Tips for A Mobile Office

Computers have become such a part of the corporate world, it would be almost impossible to find an organization without one. These days, with people working from home and while traveling, laptops are outselling their larger and bulkier desktop brethren. Most executives have both, although many are using their laptops as their primary computers, thanks to their portability. Here are some practical tips for getting the most out of your laptop, whether you're at the office, at home, or on the road.

### Buying tips

The portable computer is now available at very affordable prices, with low-end models beginning at around $500. The more expensive models are on a par with desktops as far as speed and storage are concerned. When purchasing a laptop, pay attention to the following:

• Stick to name brand manufacturers. Customer support will be more reliable.
• If you plan to use it a lot on the go, find one that's under 5 lbs.
• Look for a model with a spill-resistant keyboard and a shock resistant hard drive.
• Purchase an extended warranty, generally for three years. Even if you have just one problem, it will pay for itself.
• Make sure that the screen is not too small for your eyes, and that the keyboard fits comfortably under your fingertips.
• If you plan to use it at the office and on the go, set up a "docking station" at your desk which would include a keyboard, mouse, and monitor.

### Printing on the go

If you're on the go and need to print important documents, it's not always convenient to find a Kinko's. Purchase a small travel printer which can easily fit in your computer bag. Both Hewlett

Packard and Canon have a variety of models that are less than 5 lbs and sell for under $250.00

### Protecting your stuff

Whether you're stationary or on the road, you need to back up your stuff. Purchase a USB flash drive, which is the size of a thumb, and you'll be able to back up and print from any computer.

Take measures to protect your unit from theft. Carry it an inconspicuous case, and never leave it unattended, even for a moment. All information should be protected with a secure password. If you're using it in a hotel room, hide it before you leave. And always back up your data.

Thanks to these measures, you can now take your work anywhere you go. Just don't forget to take some time off, or you may burn out.



ESTATE PLANNING
POST MORTEM ADMINISTRATION
BUSINESS SUCCESSION PLANNING

## Gregory P. Turza
ATTORNEY & COUNSELOR AT LAW



**Concourse Plaza**
**4711 Golf Road**
**Suite 550**
**Skokie, Illinois 60076**

**Telephone: (847) 674-0200**
Facsimile: (847) 674-9115
greg@myestateplan.net
www.myestateplan.net

© 2007 GREGORY P. TURZA, JD, Phone: 847-674-0200. All rights reserved.
No portion of this newsletter may be reused in any way without prior express written consent.



| About Us | The Daily Plan-It | Pricing | Sign Up | Success Stories | Download Samples | Our Team |

## About The Daily Plan-It

About the Daily Plan-It
Sample User Templates
Website Features

The Daily Plan-It is a one-page fax/e-mail newsletter that offers industry information, marketing tips, and (sometimes) simply humor to your rainbrokers. We locate and provide this information for you. Each newsletter can be customized to include your upcoming workshop dates. Prior to each distribution, you´ll receive three email reminders alerting you to send in your upcoming schedule or other information that you choose to include and upload in your 1/4 page user template. After the distribution is completed, the system will automatically process bounced e-mails and undelivered faxes. It just doesn´t get easier than this!

### This program provides:

**Consistency**

Consistency will increase the effectiveness of your marketing and produce more referrals. The Daily Plan-It is automatically distributed approximately every other week.

**Material**

We provide the material for marketing so you don´t have to devote your valuable time to prepare it.

### Sample User Templates

Click here to view sample user templates. The sample templates show examples of what your personalized 1/4 page section of each Daily Plan-It can look like.

### Website Features

To view some of the exciting features on our advanced website click here.

**The Five Year Promise™** - If you use the Daily Plan-It™ system the way it is designed, just one new case from the Daily Plan-It™ will allow you to pay for five years use of this system. If not, we will refund 100% money back, guaranteed. To learn more about The Five Year Promise™ click here

Top of Mind Awareness, LLC
4805 W. Laurel Street, Suite 230
Tampa, Florida 33607
(678) 777-8972
support@topofmind.org



| About Us | The Daily Plan-It | Pricing | Sign Up | Success Stories | Download Samples | Our Team |

## Success Stories & Subscriber Quotes

*"The Daily Plan-It is a great way to effortlessly keep in touch with referral sources. It is an excellent way to maintain relationships for months at a time when I've been too busy to personally connect with colleagues."*

Marty Fogarty, Heartland Planning Group
Glenview, Illinois

*"The Daily Plan-it is a powerful marketing tool that allows us to communicate relevant estate planning issues to our clients, and allows us to be on the "top of the minds" of our referral sources on a regular basis. We receive numerous compliments and thank-you's from our referral sources for keeping them informed. In addition, we have gotten a referral or a call from a forgotten source as a direct result of using the Daily Plan-It. It's effective and inexpensive, and takes almost no time to administer."*

Vincent Bonazzoli, The Vincent E. Bonazzoli Law Firm, P.C.
Lynnfield, Massachusetts

*"The Daily Plan-It has helped me to keep my referral sources informed. Most of all, it has helped me to maintain my "brand" among those referral sources as an attorney with whom they want to be associated. I have received many compliments from referral sources about the value of the Daily Plan-It to their work. I have also been contacted by associates who work with my referral sources that want to receive their own copy of the Daily Plan-It rather than borrowing someone else's copy. This kind of "buzz" is priceless."*

Karen Brady, Karen Brady & Associates, P.C.
Arvada, Colorado

*"The Daily Plan-It is probably the most effective tool we've run across to "stay in touch" with financial professionals. It is written in plain English, not legalese. And I know some financial advisors we work with have made copies to give to some of their clients. The ease with which we can customize a piece of it helps readers know what we're doing, and our workshop schedule. This is the most powerful, effective, easy to use and inexpensive tool to maintain "top of the mind" awareness that I know of. Try it. You'll like it."*

Dave Frisee, Frisse Law Offices, LLC
Terre Haute, IN

*"The Daily Plan-it keeps referral sources thinking about my firm and reinforces us as a "go to resource" for info and solutions. It is effortless and has more than paid for itself in client referrals."*

Candace M. Pollock, Hahn & Pollock, LLC
Cleveland, OH

*"We have provided our professional advisor referral sources with the Daily Plan-It for more than two years now. I could not possibly personally contact each of the 250 advisors in our data base every month. But with the Daily Plan-It, each and every one of them hears and receives valuable information from me twice a month. And when I do talk to them, our advisors frequently tell me how*

*much they enjoy receiving the Daily Plan-It."*

Steven B. Spewak Estate Plan Strategies, LLC
St. Louis, MO

---

*"I have used the Daily Plan-It for our top of mind awareness marketing for several years and would be lost without it. I especially like the ease of use of the website that we use to administer the Daily Plan-It. We can add or delete people that we want to receive the piece with just a few clicks of the mouse. Its great!*

Chuck Wilder
Winter Park, FL

---

**The Five Year Promise™** - If you use the Daily Plan-It™ system the way it is designed, just one new case from the Daily Plan-It™ will allow you to pay for five years use of this system. If not, we will refund 100% money back, guaranteed. To learn more about The Five Year Promise™ click here

Top of Mind Awareness, LLC
4805 W. Laurel Street, Suite 230
Tampa, Florida 33607
(678) 777-8972
support@topofmind.org

Westlaw.

4 Misc.3d 4                                                              Page 1

4 Misc.3d 4, 779 N.Y.S.2d 882, 2004 N.Y. Slip Op. 24131

**(Cite as: 4 Misc.3d 4)**

▷

Rudgayzer & Gratt v. Enine, Inc.

N.Y.Sup.App.Term,2004.

Supreme Court, Appellate Term, New York.
2nd and 11th Judicial Districts.
RUDGAYZER & GRATT, Appellant,
v.
ENINE, INC. and Fax.Com, Inc., Respondents.
Harold Bonime, Appellant,
Perry Johnson, Inc., Respondent.
April 14, 2004.

**Background:** Two recipients of unsolicited facsimile transmissions brought separate actions against senders under federal Telephone Consumer Protection Act (TCPA). In first action, the Civil Court, Kings County, D. Silver, J., 193 Misc.2d 449, 749 N.Y.S.2d 855, denied recipient's motion for summary judgment and dismissed the complaint. In second action, The Civil Court, Kings County, K. Rothenberg, J., granted sender's motion for summary judgment. Recipients appealed.

**Holdings:** The Supreme Court, Appellate Term, held that:

(1) transmission that recommended a described stock and gave subscription information for future issues of a newsletter was an "unsolicited advertisement" prohibited by the TCPA;

(2) transmission mentioning sender's company name, connecting sender to the contents of the fax, and inviting calls for further information advertised "commercial availability or quality of services" within meaning of TCPA; and

(3) TCPA's prohibition on unsolicited facsimile advertising did not violate First Amendment free speech protections.

Reversed and remanded.

West Headnotes

**[1] Telecommunications 372 ⟋888**

372 Telecommunications
   372III Telephones
      372III(F) Telephone Service
         372k888 k. Advertising, Canvassing and Soliciting; Telemarketing. Most Cited Cases
         (Formerly 92Hk7 Consumer Protection)
Facsimile transmission that recommended a described stock and gave subscription information for future issues of a newsletter was an "unsolicited advertisement" prohibited by the Telephone Consumer Protection Act (TCPA); statute proposed a commercial transaction, for the stock, the newsletter or both. Communications Act of 1934, § 227(a)(4), as amended, 47 U.S.C.A. § 227(a)(4).

**[2] Telecommunications 372 ⟋888**

372 Telecommunications
   372III Telephones
      372III(F) Telephone Service
         372k888 k. Advertising, Canvassing and Soliciting; Telemarketing. Most Cited Cases
         (Formerly 92Hk7 Consumer Protection)
Facsimile transmission mentioning sender's company name, connecting sender to the contents of the fax, and inviting calls for further information advertised "commercial availability or quality of services" within meaning of the Telephone Consumer Protection Act (TCPA); fax pitched a product or service under the guise of providing information about it, and therefore proposes a commercial transaction, although the proposal in so many words would occur when the fax recipient called the sender. Communications Act of 1934, § 227(a)(4), as amended, 47 U.S.C.A. § 227(a)(4).

**[3] Constitutional Law 92 ⟋1640**

92 Constitutional Law
   92XVIII Freedom of Speech, Expression, and Press
      92XVIII(E) Advertising and Signs
         92XVIII(E)2 Advertising
            92k1640 k. In General. Most Cited

4 Misc.3d 4, 779 N.Y.S.2d 882, 2004 N.Y. Slip Op. 24131

**(Cite as: 4 Misc.3d 4)**

Cases

(Formerly 92k90.3)

**Telecommunications 372 ☞730**

372 Telecommunications
  372III Telephones
    372III(A) In General
      372k727 Constitutional and Statutory Provisions
        372k730 k. Validity. Most Cited Cases
      (Formerly 92Hk2.1 Consumer Protection)
Telephone Consumer Protection Act's (TCPA) prohibition on unsolicited facsimile advertising did not violate First Amendment free speech protections; TCPA did not ban any advertising content, left other means of conveying the information open to the advertiser, and furthered governmental interests in preventing cost-shifting from advertisers to unwilling recipients of their materials and preventing fax owners from being deprived of the use of their property by incoming advertising faxes. U.S.C.A. Const.Amend. 1; Communications Act of 1934, § 227(b)(3), as amended, 47 U.S.C.A. § 227(b)(3).

**[4] Constitutional Law 92 ☞1537**

92 Constitutional Law
  92XVIII Freedom of Speech, Expression, and Press
    92XVIII(A) In General
      92XVIII(A)2 Commercial Speech in General
        92k1537 k. Difference in Protection Given to Other Speech. Most Cited Cases
      (Formerly 92k90.2)
Constitution accords a lesser protection to commercial speech than to other constitutionally guaranteed expression. U.S.C.A. Const.Amend. 1.

**[5] Constitutional Law 92 ☞1541**

92 Constitutional Law
  92XVIII Freedom of Speech, Expression, and Press
    92XVIII(A) In General
      92XVIII(A)2 Commercial Speech in General

        92k1541 k. Reasonableness; Relationship to Governmental Interest. Most Cited Cases
      (Formerly 92k90.2)
Free speech protection available for particular commercial expression turns on the nature both of the expression and of the governmental interests served by its regulation. U.S.C.A. Const.Amend. 1.

**[6] Constitutional Law 92 ☞1541**

92 Constitutional Law
  92XVIII Freedom of Speech, Expression, and Press
    92XVIII(A) In General
      92XVIII(A)2 Commercial Speech in General

        92k1541 k. Reasonableness; Relationship to Governmental Interest. Most Cited Cases
      (Formerly 92k90.2)
To meet burden of showing that restriction on commercial speech does not violate constitutional free speech protections, the State or, if the issue arises in private litigation, the party seeking to uphold the restriction must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree. U.S.C.A. Const.Amend. 1.

West Codenotes
Negative Treatment Reconsidered47 U.S.C.A. § 227
**\*\*884 \*6** Todd C. Bank, Kew Gardens, for Rudgayzer & Gratt, appellant.
Cozen O'Connor, New York City (Theresa Murphy and Julie Negovan of counsel), for Enine, Inc. and another, respondents.
Roslynn R. Mauskopf, United States Attorney, Washington, D.C. (Robert D. McCallum, Jr., Mark B. Stern and Sharon Swingle of counsel), for United States of America, amicus curiae.

Present: ARONIN, J.P., PATTERSON and GOLIA, JJ.

    **\*4** Appeal by plaintiff Rudgayzer & Gratt from an order of the Civil Court, Kings County (D. Silber, J.), entered October 1, 2002, denying its mo-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

4 Misc.3d 4, 779 N.Y.S.2d 882, 2004 N.Y. Slip Op. 24131
**(Cite as: 4 Misc.3d 4)**

tion for summary judgment and, upon a search of the record, dismissing its complaint (193 Misc.2d 449, 749 N.Y.S.2d 855) (No. 2002-1700 K C, "Action No. 1").

Appeal by plaintiff Harold Bonime from an order of the Civil Court, Kings County (K. Rothenberg, J.), entered November 8, 2002, granting defendant's motion for summary judgment dismissing the complaint (No. 2002-1740 K C; "Action No. 2").

On the court's own motion, the appeals are consolidated for purposes of disposition.

Order entered October 1, 2002 unanimously reversed without costs, plaintiff's motion for summary judgment granted on the issue of liability only and matter remanded to the court below for an assessment of damages (Action No. 1).

Order entered November 8, 2002 unanimously reversed without costs, defendant's motion for summary judgment denied and, upon a search of the record, summary judgment granted to plaintiff on the issue of liability only and matter remanded to the court below for an assessment of damages (Action No. 2).

Plaintiffs commenced actions pursuant to the Telephone Consumer Protection Act (TCPA) (47 USC § 227[b][3] ), complaining that defendants in each action transmitted unsolicited advertisements to their facsimile (fax) machines without their authorization, in violation of the TCPA.

The TCPA provides, in pertinent part, that "It shall be unlawful for any person within the United States ... to use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine ..." (47 USC § 227[b][1][C] ).

The TCPA, 47 USC § 227(a)(4), defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which **7** is transmitted to any person without that person's prior express invitation or permission."

Plaintiffs each sought treble damages of $1,500 as provided at 47 USC § 227(b)(3) on the grounds that the transmissions were "willful or knowing." Plaintiff in Action No. 1 and defendant in Action No. 2 each moved for summary judgment. The courts below dismissed both actions on the ground that the TCPA violates the First Amendment to the U.S. Constitution.

**\*\*885** [1] The order in Action No. 1 (193 Misc.2d 449, 749 N.Y.S.2d 855), must be reversed, plaintiff's motion for summary judgment granted on the issue of liability and the matter remanded to the court below for an assessment of damages. The fax at issue (although of very poor transmission quality) clearly falls within the TCPA's definition of an "unsolicited advertisement." The fax, sent by defendant Fax.com, Inc. on behalf of defendant Enine, Inc. includes a "strong buy" recommendation for the stock described therein, indicates that Enine, Inc. recommended the stock, gives the stock's price, "Reasons To Own The Stock" and a contact number. The fax also gives subscription information for future issues of the "newsletter." It therefore proposes a commercial transaction, for the stock, the newsletter or both, and falls within the ambit of the statute, as the court below properly concluded.

[2] The order in *Bonime* (Action No. 2), dismissing the action, must also be reversed. The fax at issue has the effect and purpose of advertising, albeit indirectly, defendant's services. Its essential purpose is to propose a commercial transaction, and the TCPA prohibits such unsolicited faxes. We find as a matter of law that the fax falls within the ambit of the TCPA's enforcement provisions as it "advertis[es] the commercial availability or quality of ... services" within the meaning of 47 USC § 227(a)(4). It mentions defendant's company name, connecting defendant to the contents of the fax, and invites calls for further information. The approach may be less direct than "buy Brand X," but it has the purpose and effect of influencing fax recipients to buy services, here, the implementation of ISO 9000 (see *Fashion Boutique of Short Hills, Inc. v.*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Fendi USA, Inc.,* 314 F.3d 48, 56 [2d Cir.2002] [discussing meaning of "advertising" in trademark enforcement context] ). Defendant's name is before the recipient, and the only logical explanation of this fact is that defendant is somehow associated with ISO 9000, about which defendant expresses positive views. The inescapable conclusion is that the recipient should act by calling for "information." **8** Certainly, the very fact that the recipient's attention is called to the existence of this new, improved system "advertis[es] the commercial availability or quality of ... services" (47 USC § 227[a][4] ). While there is a fine line between such a fax and one that purely provides information, we hold that the subject fax pitches a product or service under the guise of providing information about it, and therefore proposes a commercial transaction, notwithstanding that the proposal in so many words would occur when the fax recipient calls the sender. This is known in the field as direct response marketing. Moreover, as plaintiff notes, practically any advertising fax could be reformed to simply describe a product or service and provide a contact number, allowing almost any advertiser to circumvent the clear purpose of the TCPA-prevention of cost-shifting from advertisers to unwilling fax recipients and preventing deprivation of use of their own fax machines by barring unsolicited commercial advertising faxes. For these reasons, we hold that the fax in Action No. 2 falls within the ambit of the statute, and defendant's motion for summary judgment should have been denied.

In reaching this determination we do not limit our scrutiny to the four corners of the fax. Rather, such factors as who the sender is, as well as his motives, purposes and intentions for sending the fax, are all relevant. It is possible that faxes textually conveying the same ideas or even faxes that are facially identical could fall inside or outside the TCPA's ambit depending upon considerations outside the content of **886** the fax itself, such as the identity of the sender as a commercial or professional entity (versus, for example, a public interest organization or political entity) and the nature of the sender's business (*compare, e.g., In re Primus,* 436 U.S. 412, 98 S.Ct. 1893, 56 L.Ed.2d 417

[1978] [client solicitation letter sent on behalf of a civil liberties organization seeking plaintiffs for a civil liberties lawsuit was not solicitation for pecuniary gain in violation of state statute] *with Florida Bar v. Went For It, Inc.,* 515 U.S. 618, 634, 115 S.Ct. 2371, 132 L.Ed.2d 541 [1995] [upholding 30-day ban on direct mail solicitation of accident victims and noting the "many dimensions" that speech by professionals may have] ). A civil liberties organization and a personal injury attorney might conceivably send identical communications that the recipient has legal rights that the communicating entity wishes to uphold; the former is entitled to the full ambit of First Amendment protection (*Primus,* 436 U.S. at 431, 98 S.Ct. 1893), while the latter may be regulated as commercial speech, as discussed below (*Florida Bar,* 515 U.S. at 635, 115 S.Ct. 2371). Moreover, a fax depicting a **9** car with its brand name may be considered a provision of information if sent by one's college-age child (even though a commercial transaction is almost certainly being proposed), but an unsolicited advertisement if sent by an auto dealership.

Moreover, upon a search of the record (*Merritt Hill Vineyards Inc. v. Windy Heights Vineyard, Inc.,* 61 N.Y.2d 106, 472 N.Y.S.2d 592, 460 N.E.2d 1077 [1984] ), we grant summary judgment to plaintiff in Action No. 2 upon liability only, and remand the matter to the court below for a determination of damages.

However, it should be noted that plaintiff in Action No. 2 seeks, in part, equitable relief in the form of an injunction barring defendant from sending further faxes. The remedies available pursuant to the TCPA are limited to those "otherwise permitted by the laws or rules of court of a State" (47 USC § 227[b][3] ), and plaintiff's forum, the New York City Civil Court, does not have equity jurisdiction to grant, as a form of primary relief, the injunction plaintiff seeks (CCA 202).

[3] Turning to the question of the statute's constitutionality, the parties in both actions agree that the TCPA restricts commercial speech, i.e., "expression related solely to the economic interests

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

of the speaker and its audience"(*Central Hudson Gas & Elec. Corp. v. Public Serv. Commn. of N.Y.,* 447 U.S. 557, 561, 100 S.Ct. 2343, 65 L.Ed.2d 341 [1980] ), specifically "unsolicited advertisement," as defined in the TCPA (47 USC § 227[a][4] ).

[4][5] The Supreme Court has recognized "the 'commonsense' distinction between speech proposing a commercial transaction, which occurs in an area traditionally subject to government regulation, and other varieties of speech.... The Constitution therefore accords a lesser protection to commercial speech than to other constitutionally guaranteed expression. The protection available for particular commercial expression turns on the nature both of the expression and of the governmental interests served by its regulation"(*Central Hudson,* 447 U.S. at 562-563, 100 S.Ct. 2343 [internal citations and quotations omitted] ).

The result is a four-part test, to be employed to analyze the constitutionality of restrictions upon commercial speech:

"At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not **\*10** be misleading. Next, we ask whether the asserted governmental interest is **\*\*887** substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest"(*id.* at 566, 100 S.Ct. 2343).

[6] To meet this burden, the State (or, if the issue arises in private litigation, the party seeking to uphold the restriction) (*Bolger v. Youngs Drug Prods. Corp.,* 463 U.S. 60, 71 n. 20, 103 S.Ct. 2875, 77 L.Ed.2d 469 [1983] )"must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree"(*Florida Bar,* 515 U.S. at 626, 115 S.Ct. 2371, quoting *Edenfield v. Fane,* 507 U.S. 761, 770-771, 113 S.Ct. 1792, 123 L.Ed.2d 543 [1993] ).

Defendants and both courts below relied upon

the subsequently reversed *Missouri ex rel. Nixon v. American Blast Fax, Inc.,* 196 F.Supp.2d 920 [E.D. Mo. 2002],*revd.*323 F.3d 649 [8th Cir.2003], equating the TCPA provisions at issue with the outright bans on designated content of commercial speech invalidated in recent Supreme Court cases including *Rubin v. Coors Brewing Co.,* 514 U.S. 476, 115 S.Ct. 1585, 131 L.Ed.2d 532 [1995]; *44 Liquormart, Inc. v. Rhode Island,* 517 U.S. 484, 116 S.Ct. 1495, 134 L.Ed.2d 711 [1996]; *Lorillard Tobacco Co. v. Reilly,* 533 U.S. 525, 121 S.Ct. 2404, 150 L.Ed.2d 532 [2001], and, most recently, *Thompson v. Western States Med. Ctr.,* 535 U.S. 357, 122 S.Ct. 1497, 152 L.Ed.2d 563 [2002] (*see Nixon,* 196 F.Supp.2d at 927; *Rudgayzer & Gratt v. Enine, Inc.,* 193 Misc.2d 449, 451, 749 N.Y.S.2d 855 [Civ. Ct., Kings County 2002] ). We do not find this reasoning persuasive, and we note that the United States Court of Appeals for the Eighth Circuit, reversing*Nixon,* 323 F.3d 649, also did not accept this argument.

The restrictions upon commercial speech at issue in the foregoing Supreme Court cases barred the very utterance of presumptively true product-related information. In contrast, the TCPA does not ban any advertising content at all. It simply forbids its transmission by fax to an unwilling recipient, while leaving open to the advertiser all other means of conveying the information (*Nixon,* 323 F.3d at 659; *see also Florida Bar,* 515 U.S. 618, 633-634, 115 S.Ct. 2371, 132 L.Ed.2d 541 [noting, in favor of upholding a 30-day ban on direct solicitation of accident victims, the wide variety of communication channels left open to lawyers seeking clients] ). Furthermore, and significantly, the evils the TCPA seeks to address, shifting of advertising costs to recipients and depriving them of use of their own equipment, are brought about by the act of the fax transmission itself, not by some posited remote result of that transmission (*Nixon,* 323 F.3d at 660).

**\*11** While consistently invalidating bans on commercial speech intended to indirectly address some more remote issue, the Supreme Court has nevertheless continued to apply the *Central Hudson* analysis in evaluating the constitutionality of re-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

strictions upon commercial speech. Applying the factors noted in *Central Hudson* and reaffirmed in its progeny, we find that the TCPA restrictions upon transmission of unsolicited advertisements by facsimile are constitutional since the statute addresses a substantial government interest, materially advances that interest, and is not more extensive than necessary to serve that interest *(Central Hudson,* 447 U.S. at 566, 100 S.Ct. 2343).

All concerned agree that the government interests at stake, as expressed by plaintiffs in these actions (*see generally Edenfield,* 507 U.S. at 770, 113 S.Ct. 1792), are preventing cost-shifting from advertisers**888 to unwilling recipients of their materials and preventing fax owners from being deprived of the use of their property by incoming advertising faxes. Like the direct client solicitations at issue in *Florida Bar,* 515 U.S. 618, 115 S.Ct. 2371, 132 L.Ed.2d 541, this harm is accomplished through the very act of transmitting such a fax. The regulation at issue here, like the solicitation ban in *Florida Bar,* directly addresses this harm (*see Nixon,* 323 F.3d at 660).

Plaintiffs have met their burden of establishing that the interest in addressing the stated harms is substantial *(Central Hudson,* 447 U.S. at 564, 100 S.Ct. 2343). They submitted evidence that in considering the provisions at issue here, Congress received testimony both that the numbers of such unwanted advertising faxes was substantially increasing, and that recipients must pay for paper and toner, and incur other costs, in receiving the unwanted advertising. While the testimony indicated that this cost could be as low as three cents per page, any appropriation of another's property without consent is abhorrent to the American idea of property rights regardless of the value of the property involved (*see Phillips v. Washington Legal Found.,* 524 U.S. 156, 169-170, 118 S.Ct. 1925, 141 L.Ed.2d 174 [1998] ["We have never held that a physical item is not 'property' simply because it lacks a positive economic or market value"]; *Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 [1982] [permanent physical occupation of property, no

matter how small in area or minimal in economic impact, is a taking]; Hearing Before the Subcommittee on Telecommunication & Finance of the House Energy and Commerce Commn. [H.R. 1304/H.R. 1305], 102nd Cong., 1st Sess. 2 [1991] ). Congress also noted the centrality of the fax machine to modern business communications (Report to Accompany H.R. 1304, H.R. Rep. No. 102-317, at 10). While defendants**12 in both actions dismiss these considerations as minor and argue that Congress gave them little consideration prior to enacting the TCPA fax provisions, the First Amendment does not require the compilation of exhaustive statistical and empirical reports to establish a substantial interest; "restrictions based solely on history, consensus and 'simple common sense' " have been upheld (*see Florida Bar,* 515 U.S. at 628, 115 S.Ct. 2371; *Nixon,* 323 F.3d at 656). The shifting of costs from fax advertisers to recipients and deprivation of use of their property, at whatever level, is unavoidable, and Congress was entitled to forbid this interference based on the factors cited above.

Congress was also entitled to find that unsolicited advertising faxes were responsible for the vast majority of the offenses to its cited interests, and thus to restrict the scope of regulation to such faxes. As in the present case, the United States Court of Appeals for the Ninth Circuit noted, in its opinion upholding the fax provisions of the TCPA, that the parties challenging the statute in the case before it:

"had not disputed that unsolicited commercial fax solicitations are responsible for the bulk of advertising cost shifting. Thus, banning them is a reasonable means to achieve Congress's goal of reducing cost shifting. The First Amendment does not require Congress to forgo addressing the problem at all unless it completely eliminates cost shifting"(*Destination Ventures, Ltd. v. FCC,* 46 F.3d 54, 56 [9th Cir.1995], citing *United States v. Edge Broadcasting Co.,* 509 U.S. 418, 113 S.Ct. 2696, 125 L.Ed.2d 345 [1993] ).

**889 The Eighth Circuit expressed its agreement with this analysis as well (*Nixon,* 323 F.3d at 658).

The fact that advertising faxes constitute the bulk of unsolicited faxes also distinguishes the present case from *City of Cincinnati v. Discovery Network, Inc.,* 507 U.S. 410, 113 S.Ct. 1505, 123 L.Ed.2d 99 [1993], which defendants argue mandates a finding that the TCPA is unconstitutional. The ordinance at issue in *Discovery Network* would have removed roughly 60 of the estimated 2,000 newsracks in the city of Cincinnati, and thus could not by any means be said to materially advance the city's goals of improving esthetics and reducing sidewalk clutter. In the arena of unsolicited faxes, by contrast, all evidence to date indicates that a ban on advertising faxes in fact materially advances the cost-shifting and property interests cited by Congress, and no evidence has yet emerged of an onslaught of unsolicited non-advertising faxes, jokes, surveys, *13 free give-aways or political campaign faxes, that would cause the TCPA's ban on unsolicited advertisements to be so insignificant as to render the statute unconstitutional.

Finally, the TCPA fax provisions are not more extensive than necessary to advance the interests at stake, in that they are a "reasonable fit" with the legislative end of preventing cost-shifting and preemption of equipment use (*see generally Board of Trustees of State Univ. of N.Y. v. Fox,* 492 U.S. 469, 480, 109 S.Ct. 3028, 106 L.Ed.2d 388 [1989] ). Plaintiffs in both actions have "demonstrate[d] that the harms [they] recite[ ] are real and that [the] restriction will in fact alleviate them to a material degree"(*Florida Bar,* 515 U.S. at 626, 115 S.Ct. 2371, quoting *Edenfield,* 507 U.S. at 770-771, 113 S.Ct. 1792). This is all that the First Amendment requires.

Nor is there any requirement in the Supreme Court's most recent holdings on this subject that the least restrictive means of regulation be determined (*Nixon,* 323 F.3d at 658-659). The Supreme Court stated in 2001 in *Lorillard* that "We have made it clear that 'the least restrictive means' is not the standard; instead, the case law requires a reasonable fit between the legislature's ends and the means chosen to accomplish those ends, ... a means narrowly tailored to achieve the desired objective"

533 U.S. at 556, 121 S.Ct. 2404 [internal quotations omitted] ). It subsequently reaffirmed this approach in *Western States,* 535 U.S. 357, 122 S.Ct. 1497, 152 L.Ed.2d 563. In analyzing its recent jurisprudence in *Western States,* the Court noted that there were substantially (as opposed to somewhat) less restrictive alternatives to the legislation at issue in those cases (as in *Western States* itself) (*see*535 U.S. at 371-372, 122 S.Ct. 1497). Many of these available means were not speech-related at all, while the regulations at issue in all of the prior cases completely foreclosed the speech involved.

Thus, the Court's caveat in *Fox,* 492 U.S. at 480, 109 S.Ct. 3028 that "almost all of the restrictions disallowed under *Central Hudson's* [final] prong have been substantially excessive, disregarding far less restrictive and more precise means," continues to apply to the Court's more recent rulings, and the mere existence of some less restrictive means of advancing the interests at stake will not invalidate the means Congress chose (*Fox,* 492 U.S. at 479, 109 S.Ct. 3028).

In the present cases, defendants suggest that Congress could have enacted a less restrictive statute, offering as a model New York General Business Law § 396-aa (which prohibits commercial faxes only at certain times or above certain lengths), or that Congress might have mandated creation of a "do not fax" *14 list, or even left the industry to self-regulation, instead of banning**890 unsolicited commercial faxing altogether. However, it is far from obvious that these measures would have effectively or even more precisely addressed the interests Congress identified in enacting the legislation. They do not address the invasion of fax owners' property interests as directly or precisely as does the TCPA. Furthermore, although banned from using fax transmission, advertisers have a myriad of other possibilities for disseminating their messages. The means Congress chose are a "reasonable fit" with the end sought and do not offend the First Amendment (*Lorillard,* 533 U.S. at 556, 121 S.Ct. 2404).

Plaintiffs in both actions established defendants

violated the TCPA by transmitting an unsolicited advertising fax to each plaintiff's fax machine. (We note that neither defendant in Action No. 1 raised an issue that it was an improper defendant although Fax.com sent the fax on behalf of Enine, Inc.) Moreover, although it was not the actual advertiser, defendant Fax.com, Inc. has been cited in a Federal Communications Commission enforcement proceeding as having the requisite "high degree of involvement in the unlawful activity [of transmitting faxes in violation of the TCPA]" to hold it liable under the TCPA [*Kaufman v. ACS Systems, Inc.,* 110 Cal.App.4th 886, 911, 2 Cal.Rptr.3d 296 (2003) ].

Both actions must be remanded to the courts below to determine damages, including whether the violations were willful or knowing within the meaning of 47 USC § 227(b)(3) (*see generally Texas v. American Blastfax, Inc.,* 164 F.Supp.2d 892 [2001]; *Kaplan v. First City Mtge.,* 183 Misc.2d 24, 701 N.Y.S.2d 859 [Rochester City Court 1999] ). The Federal District Court in *American Blastfax,* construing "willful or knowing" in the context of the TCPA, noted in that case:

"The Federal Communications Commission has interpreted 'willful or knowing' under the Telecommunications Act (of which the TCPA is a part), as not requiring bad faith, but only that the person have reason to know, or should have known, that his conduct would violate the statute ... The Court finds this is the proper standard for a finding of willful or knowing conduct under the recipient's treble damages provision" (164 F.Supp.2d at 899 [citation omitted]; *see also In re: Intercambio, Inc.,* 3 FCC Rcd. 7247, 1988 WL 486783).

The *Kaplan* Court further noted that imposition of treble damages is discretionary (47 USC § 227[b][3] ).

**\*15** The nature of the defendants' violations, although argued upon the motions below, was not discussed upon this appeal, and there is not enough evidence in the record for this court to determine whether the conduct involved here rises to the level of "willful or knowing" on the part of any of the

defendants. Accordingly, the matters are remanded to the respective courts below for a finding as to the nature of the violation and an assessment of damages in accordance therewith (*see*CPLR 3212[c] ).

Finally we note that the question of whether the TCPA has preempted General Business Law § 396-aa in whole or in part is not directly at issue in either lawsuit. Therefore, we do not pass upon it.

N.Y.Sup.App.Term,2004.
Rudgayzer & Gratt v. Enine, Inc.
4 Misc.3d 4, 779 N.Y.S.2d 882, 2004 N.Y. Slip Op. 24131

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Schumacher Fin. Servs., Inc. v. Steckelberg*, 2003 TCPA Rep. 1236 (Mo. Cir. Oct. 14, 2003)

## IN THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS
## STATE OF MISSOURI
## SCHUMACHER FINANCIAL SERVICES, INC., Plaintiff,

### v.

### DAVID STECKELBERG, Defendant
### Cause No.: 03AC-008706 Y CV

### Division 39

### Oct 14, 2003

NOTICE: The rules of some jurisdictions may impose limitations on the use of materials not designated for publication in certain officially sanctioned reporters. Consult the rules of the applicable jurisdiction regarding use and citation of this opinion.

**RESULT:**

Defendant's motion to dismiss denied.

**SYNOPSIS:**

Defendant sought to dismiss plaintiff's claims under the TCPA for an unsolicited fax sent into Missouri, arguing that the Missouri court lacked personal jurisdiction over defendant, and that the fax in question was not covered by the state. The court held that sending a facsimile advertisement into Missouri satisfied the "transaction of any business" and the "tortious act" prongs of the Missouri long arm statute so that the Missouri court has specific jurisdiction over the out-of-state sender of the fax for a cause of action under the TCPA. The court also found that the "offer of a free report" in the fax was material advertising the commercial availability of any property, goods, or services so as to be subject to the TCPA.

**SUBSEQUENT HISTORY:**

**PRIOR HISTORY:**

**CITED BY:**

*Vertex Chem. Corp. v. Asphalt Paving Equip.*, LLC, 2004 TCPA Rep. 1263 (Mo. Cir., Feb. 17, 2004).

*Marquis Fin. Corp. v. Salter*, 2004 TCPA Rep. 1332 (Mo. Cir., June 3, 2004).

*Psych. Assoc. v. Whittemore Corp.*, 2005 TCPA Rep. 1371 (Mo., Cir. Jul 22, 2005).

**APPEARANCES:**

Max Margulis, Margulis Law Group, Chesterfield Missouri for Plaintiff.

David Steckelberg, *pro se* for defendant.

**JUDGES:**

Judge Patrick Clifford

**HOLDINGS:**

[☞1] **Personal Jurisdiction**

A TCPA cause of action arises directly out of the contact Defendant directed to Plaintiff

[☞2] **Unsolicited Advertisement**

The statute does not require that a price must be associated with the products, goods, or services mentioned – only that the fax advertise their "commercial availability" or their "quality."

**[☞3] Unsolicited Advertisement**

To be subject to the TCPA, a fax need only make known to, or notify, someone about the commercial availability or the quality of any property, goods or services.

**[☞4] Unsolicited Advertisement**

"Commercial" is defined by Webster's to mean: "1) of or relating to commerce; engaged in commerce; involved in work that is intended for the mass market." It is clear from the fax that the report being mentioned is intended for the mass market.

**[☞5] Unsolicited Advertisement**

Whether a fee is or is not charged for the property, goods, or services mentioned in an unsolicited fax, is irrelevant for purposes of the TCPA.

**OPINION:**

ORDER

[**\*1**] This matter came before the Court for argument on October 14, 2003 on Defendant's Motion to Dismiss. The parties have filed memoranda of law and the Court has heard the arguments of both parties.

Plaintiff brought suit against Defendant under the private right of action provided in 47 U.S.C. § 227(b), the Telephone Consumer Protection Act, ("TCPA"). Plaintiff alleges that Defendant sent one [FN1] facsimile containing an unsolicited advertisement to Plaintiff's fax machine in Missouri, and that this fax violates the TCPA and subjects Defendant to the personal jurisdiction of the Missouri Courts.

> [FN1] Plaintiff alleges only one fax was sent to his fax machine, and the Court assumes this is true for the purposes of this motion. However, were the Court inclined to find a single fax transmission sent into this state was insufficient to satisfy personal jurisdiction, Plaintiff would be entitled as a matter of law to discovery to determine the extent of Defendant's other contacts with Missouri. *Shouse v. RFB Construction Co., Inc.*, 10 S.W.3d 189, 194 (Mo. App. W.D. 1999) ("Of course, the parties have the right to conduct discovery to demonstrate whether [defendant] has such substantial business or contacts.")

**1. Standard of Review**

On a motion to dismiss, "we accept as true the facts properly pleaded, giving the averments a [**\*2**] liberal construction, and making those reasonable inferences fairly deducible from the facts stated." *Concerned Parents v. Caruthersville School Dist. 18*, 548 S.W.2d 554, 558 (Mo. 1977). The facts as pleaded, claim that Defendant sent the fax in question to Plaintiff on or about July 11, 2002. These facts are assumed true for the purposes of this motion. A Motion to dismiss tests only the sufficiency of the pleadings.

**2. Standard for asserting personal jurisdiction**

When a defendant asserts lack of personal jurisdiction in a motion to dismiss, a plaintiff bears only the minimal burden of establishing a *prima facie* case that (1) the suit arose out of the activities enumerated in the Missouri long-arm statute, Section 506.500 RSMo.; and (2) the defendant has sufficient contacts with Missouri to satisfy due process requirements. *Schilling v. Human Support Svcs.*, 978 S.W.2d 368, 370-71 (Mo. App. E.D. 1998). "The basic due process test is whether the defendant has 'purposefully availed itself of the privilege of conducting activities within the forum state.'" *Farris v. Boyke*, 936 S.W.2d 197 (Mo. App. S.D. 1996) citing *Elaine K. v Augusta Hotel Assocs. Ltd. Partnership*, 850 S.W.2d 376, 378 (Mo. App. E.D. 1993).

Section 506.500, RSMo 1994, states:

1. Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:

(1) The transaction of any business within this state;

(2) The making of any contract within this state;

(3) The commission of a tortious act within this state;

(4) The ownership, use, or possession of any real estate situated in this state;

[**3**] (5) The contracting to insure any person, property or risk located within this state at the time of contracting;

(6) Engaging in an act of sexual intercourse within this state with the mother of a child on or near the probable period of conception of that child.

Jurisdiction is proper under due process where "the defendant has 'purposely directed' his activities as residents of the forum, *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984), and the litigation results from alleged injuries that 'arise out of or relate to' those activities, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-473 (1985).

The most recent Missouri case on long arm jurisdiction is *Products Plus Inc. v. Clean Green, Inc.* decided August 13, 2003 (Case No. 25352 S.D.) which explained that:

[I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are " purposefully directed" toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.

Missouri's long arm statute is intended to reach "to the fullest extent permissible under the due process clause of the Fourteenth Amendment." *State ex rel. Deere & Co. v. Pinnell*, 454 S.W.2d 889 (Mo. banc 1970). Missouri courts have been explicit that the exercise of long arm jurisdiction "is not susceptible to mechanical application; rather the facts of each case must be weighed to determine whether requisite affiliating circumstances are present." *State ex rel. Sperandio v. Clymer*, 581 S.W.2d 377, 382 (Mo. banc 1979).

The issue of whether faxes or telemarketing calls sent or made to Missouri residents will subject the sender to the personal jurisdiction of Missouri courts under the TCPA is not new to St. Louis courts. *See R.F. Schraut Heating & Cooling, Inc. v. Maio Success Sys., Inc.*, 2001 TCPA Rep. [**4**] 1038, No. 01AC11568 (Div. 39, Mo. Cir. Ct. Aug. 14, 2001); *Brentwood Travel, Inc. v. Lancer, Ltd.*, 2001 TCPA Rep. 1018, 01CC-000042 (Div. 45, Mo. Cir. Ct. Feb. 21, 2001) (unsolicited faxes); *Margulis v. VoicePower Telecom., Inc.*, 2001 TCPA Rep. 1023, . 00AC-013017 (Div. 39, Mo. Cir. Ct. March 22, 2001) (telemarketing calls). Defendant has presented nothing to challenge the analysis presented in those cases.

Defendant relies on *FDIC v. Malmo*, 939 F.2d 535 (8th Cir. 1991) and *CPC-Rexcell, Inc. v. La Corona Foods, Inc.*, 912 F.2d 241 (8th Cir. 1990), in support of his motion. These cases however are distinguishable. [☞1] In the case at bar, the TCPA cause of action arises *directly* out of the contact Defendant directed to Plaintiff – much like the typical law school example of a of shooting a gun across state lines. A Missouri court will have personal jurisdiction over the shooter for a cause of action arising out of the gunshot across the border, but not for some other cause of action such as a contract dispute. *FDIC* was a legal malpractice action against an out of state attorney

who solicited a client in Missouri via a letter sent into Missouri. The malpractice cause of action did not arise out of the letter itself. *CPC-Rexcell* is similarly distinguishable in that the cause of action was not based on an injury arising from the communications themselves.

### 3. Is the fax covered by the statute?

It is not disputed that Defendant sent the fax at issue to Plaintiff's fax machine without prior express permission or invitation. In essence, the only question before the Court is whether or not the fax at issue is an "unsolicited advertisement" as defined by the TCPA. "Unsolicited advertisement" is defined as:

any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission.

[**5**] 47 U.S.C. § 227(a)(4). Defendant claims that the fax at issue as "an offer of a 'free report'" and argues that "'[c]ommercial availability' also implies that a cost or price would be associated with the offer."

The Court does not agree with Defendant's restrictive interpretation of "commercial availability." [☞2] The statute does not require that a price must be associated with the products, goods, or services mentioned – only that the fax advertise their "commercial availability" or their "quality." Applying the plain language of the term "advertise" (defined by Webster's dictionary as "to make something known; to notify") [☞3] the fax need only make known to, or notify, someone about the commercial availability or the quality of any property, goods or services. [☞4] "Commercial" is defined by Webster's to mean: "1) of or relating to commerce; engaged in commerce; involved in work that is intended for the mass market." *Id.* It is clear from the fax that the report being mentioned is intended for the mass market.

It is hard to miss the numerous solicitations any professional or businessperson receives for similar industry reports in business areas such as tax planning, marketing assistance, and general business advice. While many are fee-based, some are also offered at no charge as in the fax at issue here. [☞5] The Court concludes that whether a fee is or is not charged is irrelevant for purposes of the TCPA. Indeed, a report such as this may be offered for free in one location on one day, and then the very same report may be offered for a fee in a different location on a different date, much like a new hardware store may give away items such as a garden hose during a grand opening sale, and then charge for the same garden hose the next day. This does not change the character of the item and make it a "product" on one day, and not on the other.

Further support for this conclusion is found in the fact that the FCC, which is the administrative [**6**] agency with authority to implement the TCPA, has interpreted the TCPA's definition of materials "advertising the commercial availability or quality of any property, goods, or services" as including materials offering items free of charge. In this regard, the FCC aptly noted:

The TCPA's definition does not require a sale to be made [by the solicitation] in order for the message to be considered an advertisement. Offers for free goods or services that are part of an overall marketing campaign to sell property, goods, or services constitute "advertising the commercial availability or quality of any property, goods, or services."

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 68 FR 44144-01 at ¶ 140. The interpretation of any statute by the administrative agency overseeing that statute is due great deference. *Griggs v. Duke Power Co.*, 401 U.S. 424, 434 (1971); *Chevron U.S.A. v. Natural Resources Defense Council*, 467 U.S. 837, 844 (1984). "The court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." *Id.*, 467 U.S. at 843, n 11 (additional

citations omitted). [FN2]

[FN2] For a discussion of the policy of deference to agency construction, see *Chevron and Canons of Statutory Construction*, 58 Geo. Wash. L. Rev. 829 (1990).

The fax in this case does "notify" the recipients about both the existence of the report and Defendant's business. Thus the question is reduced to whether the report or any portion thereof constitutes "property, goods or services." The Court holds that the report is a product offered by Defendant.

A very similar question with respect to the TCPA has been decided by this very Court. In *Micro Engineering, Inc. v. St. Louis Assoc. of Credit Management, Inc.*, 2002 TCPA Rep. 1080, 02AC-0082338 (Mo. Cir. Aug 13, 2002), this Court held that a facsimile advertising a "free" seminar was in fact an "unsolicited advertisement" under the TCPA. "These faxes clearly do 'announce' the [**7**] luncheons Defendant offers. It is clear that such professional functions are offered as a service, albeit ostensibly a free service." *Id., at 4.* Both *Micro Engineering, supra*, and *Harjoe v. Colonial Life & Accident Ins. Co.*, 2002 TCPA Rep. 1065, 02AC-001983 (Div. 45, Mo. Cir. Ct. Aug. 29, 2002) noted the appropriateness of a remedial construction of the TCPA:

While a court can not adopt a construction of a statue that is contrary to its plain language, the TCPA is a remedial consumer protection statute and "should be liberally construed and interpreted (when that is possible) in a manner tending to discourage attempted evasions by wrongdoers." *Scarborough v. Atlantic Coast Line R. Co.*, 178 F.2d 253, 258 (4th Cir. 1950). Exemptions from provisions of remedial statutes "are to be construed narrowly to limit exemption eligibility." *Hogar v. Suarez-Medina*, 36 F3d 177, 182 (1st Cir 1994). *See, e.g.,* the very first paragraph of the Missouri Revised Statues, which requires "all acts of the general assembly, or laws, shall be liberally construed, so as to effectuate the true intent and meaning thereof." RSMo.§ 1.010. Defendant's fax is an advertisement of Defendant's services that the "true intent and meaning" of the TCPA addresses.

*Micro Engineering, at *4.* These canons of construction reinforce the inescapable conclusion that the fax at issue in this case lies within the purview of the statute.

## CONCLUSION

The Petition sets out that Defendant directed his activities at a telephone number that is in the 314 area code, which serves only Missouri. Defendant is in complete control of what forums he is exposed to in a TCPA action by his own choice of which states he targets with his advertising transmissions. He directed his activities at the consumers in Missouri. He clearly should expect to be subject to the jurisdiction of the Missouri courts based on that contact. Accordingly, sending an unsolicited fax advertisement into Missouri in violation of the prohibitions of the TCPA satisfies both the "transacting any business" and "tortious act in this state" prongs of the Missouri long arm statute and establishes personal jurisdiction in this state that is consistent with minimum contacts and due process under the Fourteenth Amendment.

[**8**] Defendant has "transacted business" in this state by his advertising contact, and the cause of action has arisen out of that specific contact, giving rise to specific jurisdiction. Independently, Plaintiff has alleged that Defendant engaged in a tortious act with actionable consequences in this state. Plaintiff has thus made a *prima facie* case for personal jurisdiction and the court holds that the fax in question is subject to the provisions of the TCPA. Defendant's Motion is DENIED on both grounds raised.

IT IS SO ORDERED.

This the 14th day of October, 2003.

/s/ Patrick Clifford

Judge Patrick Clifford, Division 39

# # #

Printed on Friday, February 08, 2008.

Copyright © 2007. No claim to text of U.S. Government works. This file is property of TCPALaw.com. Acquisition and use of this document is subject to subscriber agreement. All rights reserved. Contact subscriptions@TCPALaw.com for more information.

*Micro Eng. v. St. Louis Ass'n of Credit Mgmt., Inc.*, 2002 TCPA Rep. 1080 (Mo. Cir. Aug. 13, 2002).    Page: 1

IN THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS
21ST JUDICIAL CIRCUIT, STATE OF MISSOURI

**FILED**

AUG 1 3 2002

**JOAN M. GILMER**
**CIRCUIT CLERK, ST. LOUIS COUNTY**

MICRO ENGINEERING, INC., ET AL.,

    Plaintiffs,

      vs.

~~NACM ST. LOUIS GATEWAY REGION,~~
ST. LOUIS ASSOCIATION OF CREDIT
MANAGEMENT, INC.,

    Defendant.

Cause No. 02AC-008238 X CV

Div. 39

## ORDER

This matter came before the Court on August 13, 2002 on Defendant's Motion to Dismiss

or in the alternative, Motion to Strike. Plaintiffs filed suit under the Telephone Consumer Protection

Act ("TCPA"), 47 U.S.C. § 227, alleging they were sent unsolicited advertisements via facsimile by

Defendant. Defendant argues that the TCPA provisions restricting unsolicited facsimile

advertisements violates First Amendment principles of free speech, citing <u>Missouri v. Am Blast Fax,</u>

<u>Inc.</u>, 196 F. Supp. 2d 920 (E.D. Mo. 2002) (hereinafter "<u>ABF</u>").[1] Defendant also argues that two of

the alleged faxes do not constitute "unsolicited advertisements" as defined by the statute.

As a preliminary matter, this Court is not bound by decisions of federal trial courts. <u>Reynolds</u>

<u>v. Diamond Foods & Poultry, Inc.</u>, -- S.W.3d -- , note 4, No. SC84433 (Mo. Banc, July 23, 2002)

(overruling <u>Fox v. McDonnell Douglas Corp.</u>, 890 S.W.2d 408, 410 (Mo. App. 1995)). This Court

has previously discussed the <u>ABF</u> decision, and found its analysis unpersuasive. <u>Clean Carton Co.,</u>

<u>Inc. v. Constellation 3D, Inc.</u>, (order denying motion to dismiss based on <u>Missouri v. ABF</u>), No.

---

    1. That decision has been appealed to the Eighth Circuit Court of Appeals by both Attorney
General Nixon and the U.S. Department of Justice.

-1-

Obtained from
**TCPALAW.COM**
The leading source for TCPA legal research

Copyright © 2008. No claim to text of U.S. Government works. This file is property of
TCPALaw.com. Acquisition and use of this document is subject to subscriber agreement.
All rights reserved. Contact subscriptions@TCPALaw.com for more information.

01AC-029591 (Div 39) (Mo. Cir. Ct., June 25, 2002);. Nothing has changed in that regard. Rather than merely follow the <u>ABF</u> decision as suggested by Defendant, the weight of persuasive contra authority requires an independent assessment of the constitutional question.

This Court has had the opportunity to address this precise question several times. <u>Clean Carton Co., Inc. v. Constellation 3D, Inc.</u>, (order denying motion to dismiss based on <u>Missouri v. ABF</u>), No. 01AC-029591 (Div 39) (Mo. Cir. Ct., June 25, 2002); <u>Rhone v. Olympic Comm., Inc.</u>, No.: 01AC-002887 (Div 39) (Mo. Cir. May 14, 2002); <u>Brentwood Travel Serv., Inc. v. Ewing</u>, No 01AC-022171 (Div. 39) (Mo. Cir. Ct., Apr. 30, 2002) <u>Zeid v. The Reding Law Firm, P.C.</u>, No. 01AC-013005 (Div 39) Cir. Ct. Mo., March 19, 2002); <u>Coleman v. ABF</u>, No. 00AC-005196 (Div. 32) (Mo. Cir. Ct. Oct. 12, 2000). Those previous orders set out ample analysis of this question, and nothing has been presented by this defendant to cause the Court to reach a different conclusion this time. "Although it is common to place the burden upon the Government to justify impingements on First Amendment interests, it is the obligation of the person desiring to engage in assertedly expressive conduct to demonstrate that the First Amendment even applies." <u>Clark v. Community for Creative Non-violence</u>, 468 U.S. 288, note 5 (1984) (overnight camping prohibition not a First Amendment violation). Defendant has not met that obligation. Using another person's fax machine, paper, and toner without their permission is theft and a trespass – not a speech right. There is no speech restriction here that requires First Amendment scrutiny.

Defendant's argument that the TCPA is an impermissible restriction on free speech can only be based on a perceived right to use another person's fax machine, paper, and toner, all without permission of the property owner. To make this a speech case, is to insist on a right to use someone else's paper, ink, and printing press to print your message, all without the permission of the owner of that printing press. "The First Amendment is not a license to trespass, to steal, or to intrude by

Obtained from
**TCPALAW.COM**
The leading source for TCPA legal research

Copyright © 2008. No claim to text of U.S. Government works. This file is property of TCPALaw.com. Acquisition and use of this document is subject to subscriber agreement. All rights reserved. Contact subscriptions@TCPALaw.com for more information.

electronic means into the precincts of another person's home or office." <u>Dietmann v. Time, Inc.</u>, 449 F.2d 245, 249 (9th Cir. 1971); "[I]t is untenable that conduct such as vandalism is protected by the First Amendment merely because those engaged in such conduct intend thereby to express an idea." <u>In re Michael M.</u>, 86 Cal.App.4th 718, 729 citing <u>Texas v. Johnson</u>, (1989) 491 U.S. 397, 404; <u>See, also</u>, <u>State v. Mortimer</u>, 641 A.2d 257 (N.J. 1994) (free speech protection was lost when defendants delivered their message through defacement of private property); <u>State v. Nye</u>, 943 P.2d 96, 101 (1997) (no right to put bumper stickers on other people's cars without their permission).

"It has never been deemed an abridgement of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed." <u>Giboney v. Empire Storage & Ice Co.</u>, 336 U.S. 490, 507 (1949). Sending unsolicited facsimile advertisements without the recipient's permission is simply not a form of conduct protected by the First Amendment, any more than graffiti on someone else's property is protected speech.

**Definition of Unsolicited Advertisement**

Defendant next argues that two of the faxes at issue do not constitute an "unsolicited advertisement" as defined by the statute. That definition is "any material advertising the commercial availability or quality of any property, goods, or services." 47 U.S.C. § 227(a)(4). Defendant argues that "[a] facsimile which does not attempt to sell any property, goods or services and only advises a party of an opportunity in which they may partake is not an "advertisement" as defined under the TCPA." Def. Mtn. at ¶ 16. This interpretation misreads the statute. The statute does not require that the property, goods or services being mentioned must be "for sale" as Defendant' argues.

While a court can not adopt a construction of a statue that is contrary to its plain language, the TCPA is a remedial consumer protection statute and "should be liberally construed and


Obtained from
**TCPALAW.COM**
The leading source for TCPA legal research

Copyright © 2008. No claim to text of U.S. Government works. This file is property of TCPALaw.com. Acquisition and use of this document is subject to subscriber agreement. All rights reserved. Contact subscriptions@TCPALaw.com for more information.

interpreted (when that is possible) in a manner tending to discourage attempted evasions by wrongdoers." Scarborough v. Atlantic Coast Line R. Co., 178 F.2d 253, 258 (4th Cir. 1950). Exemptions from provisions of remedial statutes "are to be construed narrowly to limit exemption eligibility." Hogar v. Suarez-Medina, 36 F3d 177, 182 (1st Cir 1994). See, e.g., the very first paragraph of the Missouri Revised Statues, which requires "all acts of the general assembly, or laws, shall be liberally construed, so as to effectuate the true intent and meaning thereof." RSMo.§ 1.010. Defendant's fax is an advertisement of Defendant's services that the "true intent and meaning" of the TCPA addresses.

So is this material "advertising?" Webster's dictionary defines "advertise" as "to make something known to : notify." This is a pristine example of where the application of the time honored "duck test" is appropriate - "If it walks like a duck, quacks like a duck, and looks like a duck, then it's a duck." BMC Industries, Inc. v. Barth Industries, Inc., 160 F.3d 1322, 1337 (11th Cir., 1998). These faxes clearly do "announce" the luncheons Defendant offers. It is clear that such professional functions are offered as a service, albeit ostensibly a free service. It is clear also, that the luncheon consists of a meal. Again, ostensibly free, but "property, goods or service" clearly encompasses the concept of a meal. The fax plainly states that NACM provides services to the "credit and financial professional." Indeed, these types of luncheon seminars are themselves a service. Also prominently advertised on the fax is Defendant's web site. This web site is a service. Harjoe v. Colonial Life & Accident Ins. Co., No 01AC-11555, slop op. at 3, (Div. 35) (Mo. Cir. Ct., May 2, 2002 currently before Div 45 on Motion for Trial De Novo of defendant ).

## **CONCLUSION**

Defendant's motion to Dismiss and Motion to Strike is DENIED.

IT IS SO ORDERED.

-4-

Obtained from
# TCPALAW.COM
The leading source for TCPA legal research

Copyright © 2008.  No claim to text of U.S. Government works. This file is property of TCPALaw.com. Acquisition and use of this document is subject to subscriber agreement. All rights reserved. Contact subscriptions@TCPALaw.com for more information.

This the *13* day of *August*, 2002.

_____

**Judge Patrick Clifford, Division 39**

Obtained from
**TCPALAW.COM**
The leading source for TCPA legal research

Copyright © 2008. No claim to text of U.S. Government works. This file is property of TCPALaw.com. Acquisition and use of this document is subject to subscriber agreement. All rights reserved. Contact subscriptions@TCPALaw.com for more information.

*Harjoe v. Colonial Life & Accident Ins. Co.*, 2002 TCPA Rep. 1065 (Mo. Cir. Aug. 29, 2002)

### IN THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS
### STATE OF MISSOURI

DAVID L. HARJOE, Plaintiff,

v.

COLONIAL LIFE & ACCIDENT INSURANCE COMPANY, Defendant

### Cause No.:02 CC - 001983
### Division 45
### Decided August 29, 2002

NOTICE: The rules of some jurisdictions may impose limitations on the use of materials not designated for publication in certain officially sanctioned reporters. Consult the rules of the applicable jurisdiction regarding use and citation of this opinion.

**RESULT:**

Plaintiff's motion for summary judgment granted and defendant's motion for summary judgment denied.

**SYNOPSIS:**

On a trial de novo after a decision in favor of plaintiff in the court below, the parties each moved for summary judgment on stipulated facts. The court held that there is no requirement that to be covered by the TCPA, that the goods or services advertised in a fax actually must be for sale to the recipient. The court also held that an Internet website, listed on the fax, is a service under the TCPA. Summary judgment was granted to plaintiff.

**SUBSEQUENT HISTORY:**

**PRIOR HISTORY:**

*Harjoe v. Colonial Life & Accident Ins. Co.*, 2002 TCPA Rep. 1064 (Mo. Cir. May 2, 2002)

**APPEARANCES:**

Max Margulis, Margulis Law Group, Chesterfield Missouri for plaintiff.

Robert J Golterman, Lewis Rice and Fingersh LC, St. Louis, Missouri for defendant.

**JUDGES:**

Sidney Chaffin, Judge.

**HOLDINGS:**

**[☞1] Unsolicited Advertisement**

There is no requirement that to be covered by the statute, that the goods or services advertised actually must be for sale to the recipient.

**[☞2] Remedial/Penal nature**

An interpretation that the goods or services must be for sale to the recipient is overly strict – especially considering the remedial nature of the statute.

**[☞3] Unsolicited Advertisement**

To fall within the ambit of the TCPA, an unsolicited fax need only notify or announce to a recipient, the commercial availability of any property, goods, or services, or

make qualitative statements about them.

[☞4] **Unsolicited Advertisement**

An Internet website, listed on the fax, is also a service within the TCPA.

**OPINION:**

ORDER AND JUDGMENT

[**\*1**] This matter came before the Court on August 29, 2002 on Plaintiff's Motion to for Summary Judgment and Defendant's cross Motion for Summary Judgment. This is an action originally brought by Plaintiff in the Associate Circuit Division, against Colonial Life & Accident Insurance Company ("Colonial"), alleging transmission of an unsolicited advertisement via facsimile in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Judgment was rendered against Defendant on May 2, 2002 by Division 35, and Defendant sought a trial de novo in this Court.

The parties have stipulated to a set of facts which establish the relevant elements of the cause of action. At all times relevant, Plaintiff had telephone facsimile service at the facsimile telephone number of (314) 878-7277. On March 28, 2000 Defendant sent a facsimile transmission to and received by Plaintiff at (314) 878-7277, and Defendant did not obtain prior express invitation or permission to send the fax to Plaintiff. Defendant knew it was sending the fax, and was fully aware of the content of the fax. The fax at issue was not sent as a result of any accident or mistaken act.

The Missouri Supreme Court reaffirmed the standard under which a summary judgment [**\*2**] should be entered in favor of the moving party in a lawsuit, in *ITT Commercial Finance Corp. v. Mid-American Marine Supply Corp.*, 854 S.W.2d 371, (Mo. banc 1993). In so defining, the Court stated:

If the non-movant cannot contradict a showing of the movant, **judgment is properly entered against the non-movant because the movant has already established a right to judgment as a matter of law.**

*ITT*, 854 S.W.2d at 381 (emphasis added). Further, a defendant cannot rely on pleadings of ultimate facts when confronted with a Motion for Summary Judgment. *Snowden v. Northwest Missouri State University*, 624 S.W.2d 161, 169 (Mo.App. 1981). In such a case, summary judgment, if appropriate, will be entered against the non-moving party. Rule 74.04(c)(3); *Charity v. City of Haiti Heights*, 563 S.W.2d 72, 75 (Mo. banc 1978).

**Elements of the Telephone Consumer Protection Act.**

The elements of an unsolicited fax advertisement claim under the TCPA are that a person 1) uses a telephone facsimile machine, computer, or other device 2) to send an unsolicited advertisement. The stipulated facts establish nearly all the elements of Plaintiff's claim, with the only question remaining being whether the fax at issue contains "material advertising the commercial availability of any property goods, or services." 47 U.S.C. § 227(a)(4). Defendant describes the fax as merely "announcing employment opportunities" while Plaintiff argues that the fax advertises Defendant's company and the services it offers, such as its website. Plaintiff also argues that the fax is a qualitative statement about Defendant's services. The only question is whether or not the facsimile contains an "unsolicited advertisement" subject to the statute.

**Definition of "unsolicited advertisement"**

The statutory definition of "unsolicited advertisement" at 47 U.S.C. § 227(a)(4) is:

(4) The term ``unsolicited advertisement'' means any material advertising the [**\*3**] commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission.

Whether the fax at issue meets this definition is ultimately one of statutory

construction. With any question of construction, the nature of the statute plays a role in that construction. While criminal statutes invoke the rule of lenity, remedial statues "should be liberally construed and interpreted (when that is possible) in a manner tending to discourage attempted evasions by wrongdoers." *Scarborough v. Atlantic Coast Line R. Co.*, 178 F.2d 253, 258 (4th Cir. 1950). Exemptions from provisions of remedial statutes "are to be construed narrowly to limit exemption eligibility." *Hogar v. Suarez-Medina*, 36 F3d 177, 182 (1st Cir 1994). *See, e.g.*, the very first paragraph of the Missouri Revised Statues, which requires "all acts of the general assembly, or laws, shall be liberally construed, so as to effectuate the true intent and meaning thereof." RSMo.§ 1.010.

Defendant argues that nothing is being offered "for sale" by the faxes. [☞1] But there is no requirement that to be covered by the statute, that the goods or services advertised actually must be for sale to the recipient. They only have to be "advertised." Indeed, we commonly see advertisements for "free" goods and services, often given away at no charge to secure customer goodwill or brand recognition, as a loss leader to generate sales of other goods or services, or just to obtain contact information for potential new customers. Webster's dictionary defines "advertise" as "to make something known to : notify" and this is the proper construction of that term as used in the TCPA. [☞2] Defendant's interpretation that the goods or services must be for sale to the recipient is overly strict - especially considering the remedial nature of the statute. [☞3] To fall within the ambit of the TCPA, an unsolicited fax need only notify or announce to a recipient, the commercial availability of any property, goods, or services, or make qualitative statements about them. Defendant is clearly engaged in a commercial insurance business, and the fax in question does notify the recipient about [*4] the existence of Defendant's insurance wares and their commercial availability.

### Defendant's web site is a service.

[☞4] The Court also agrees with Plaintiff that Defendant's Internet website, listed on the fax, is also a service within the TCPA. If Defendant's argument were correct that the referral of the reader of a fax to Defendant's web site is not an advertisement under the TCPA, **any** fax advertiser could escape the TCPA by putting all the sales pitches on a web site, and broadcast millions of faxes with merely a logo and a web site address. This type of subterfuge would permit easy evasion of the law. A foundational rule of statutory construction, construing a statute broadly for the public benefit, is "to suppress subtle inventions and evasions for continuance of the mischief." *Cummins v. Kansas City Public Service Co.*, 334 Mo. 672, 698-99 (Mo. banc 1933). In this case, the mischief is unsolicited faxes promoting the goods and services of commercial enterprises like Defendant.

### CONCLUSION

Plaintiff's Motion is GRANTED. Defendant's Motion is denied. Plaintiff shall have and recover from Defendant Colonial Life & Accident Insurance Company, judgment in the amount of $ 750 plus court costs.

It is SO ORDERED, this the 29th day of August, 2002

/s/ Sidney Chaffin

Judge Sidney Chaffin

Division 45

# # #

Printed on Friday, February 08, 2008.

Copyright © 2007. No claim to text of U.S. Government works. This file is property of TCPALaw.com. Acquisition and use of this document is subject to subscriber agreement. All rights

reserved. Contact subscriptions@TCPALaw.com for more information.