IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IRA HOLTZMAN, individually and as the representative of a class of similarly situated persons,  )<br>)<br>)<br>) | |
| Plaintiff,  ) | No.  08 C 2014 |
| v.  ) | |
| )  | Judge Robert W. Gettleman |
| GREGORY P. TURZA,  )<br>) | |
| Defendant.  ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ira Holtzman has sued defendant Gregory P. Turza for sending him by facsimile ("fax") an unsolicited advertisement in violation of the federal Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227.  Turza has moved to dismiss the claim under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  For the reasons discussed below, defendant's motion is denied.

## BACKGROUND

Defendant is an attorney who operates a law practice in Skokie, Illinois.  In November 2007, he had a one-page newsletter sent to plaintiff by fax.  The plaintiff, who had never given defendant permission to do this, objected and filed suit.  Given that the content of the facsimile is a central issue in this case, it is worthwhile to describe it in detail.[1]  At the top of the page is the name of the newsletter, "The 'Daily Plan-It.'" These words are italicized, bolded, and underlined.  Just below them, it states "Gregory P. Turza, JD," along with the date and volume and issue numbers.  The design calls to mind a newspaper masthead.  Beneath this "masthead,"

---

[1]A copy of the fax is attached as Appendix A.

the facsimile is divided into two columns, which contain an editorial article offering advice about using computers. The lead headline states, "You *Can* Take it with You: Tips for A Mobile Office," and the text explains how to purchase a laptop, print documents "on the go," and protect data and computer hardware. This article runs the length of the left column and concludes in the middle of the right column. What appears in the remainder of the right column forms the crucial issue in this lawsuit. At the end of the article, in the lower right corner, defendant provides his name (in a font larger than any other type on the page, with the exception of "The 'Daily Plan-It'"), identifies himself as an attorney, and includes the words "estate planning," "post mortem administration," and "business succession planning" before his name. The fax also includes a logo, a photo of the building in which defendant has his office, his business address, telephone and fax numbers, e-mail address, and Web site. At the bottom of the fax defendant repeats his name and phone number. This "identifying information" occupies approximately 20 to 25 percent of the fax.

## DISCUSSION

Defendant has moved to dismiss the complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint, not decide the merits. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). Federal notice pleading "requires only a short and plain statement of the claim showing that the pleader is entitled to relief." Erickson v. Pardus, __ U.S. __, 127 S.Ct. 2197, 2200 (2007) (citing Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S.Ct. 1955 (2007)). The court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in the light most favorable to plaintiff. Moranski v. Gen. Motors Corp., 433 F.3d 537, 539 (7th Cir.

2005). Because the facsimile at issue is attached to the complaint, it is considered part of the complaint. See id. (citing Fed. R. Civ. P. (10(c)). Dismissal under Rule 12(b)(6) is appropriate if the plaintiff can prove no set of facts to support his claim. First Ins. Funding Corp. v. Fed. Ins. Co., 284 F.3d 799, 804 (7th Cir. 2002).

Plaintiff alleges that defendant violated the TCPA by faxing him an unsolicited advertisement. Defendant has moved to dismiss, arguing the fax is a newsletter and not an advertisement. Under the TCPA, it is unlawful to send an unsolicited advertisement to a telephone facsimile machine. 47 U.S.C. § 227 (b)(1)(C). The statute defines an unsolicited advertisement as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5). The TCPA, however, permits unsolicited facsimiles that do not promote a commercial product or service. See Phillips Randolph Enter., LLC v. Adler-Weiner Research Chicago, Inc., 526 F. Supp. 2d 851, 852 (N.D. Ill. 2007) (citing In re Matter of Rules & Regs. Implementing the Tel. Consumer Protection Act of 1991 and the Junk Fax Prevention Act of 2005, 2006 WL 901720, 21 F.C.C.R. 3787, at 3810 (April 6, 2006)). Because the parties agree that plaintiff did not invite or grant permission for defendant to send the facsimile, the sole issue is whether the facsimile is an advertisement under the TCPA.

According to defendant, the facsimile is an informational guide offering computer advice from a lawyer's perspective. He argues the inclusion of his contact information was merely meant to identify the author, not promote his services. There is some merit to this argument because the facsimile resembles a newsletter and includes headlines and editorial content. On

3

the other hand, it is hard to escape the conclusion that the facsimile performs *some* advertising function. The statute's plain text does not require the facsimile to propose a sale, but merely just advertise the "commercial availability" of defendant's services. While the facsimile at issue may not make a direct, overt sales pitch to its recipients, at the very least it had the effect of informing them that defendant was an attorney who did work in estate planning, post mortem administration, and business succession planning. From there, a recipient would likely have inferred that defendant's services were commercially available and could be obtained by contacting the defendant at his office, by phone or fax, or through e-mail. To view it another way, if defendant had sent a facsimile that contained only his identifying information, it clearly would have been an advertisement. The inclusion of unrelated editorial content does not somehow insulate the "identifying information" from being labeled an advertisement.

     Defendant primarily relies on two cases in arguing the identifying information, and thus the fax, should not be viewed as an advertisement. The defendant's publication, however, is fundamentally different from the facsimiles at issue in the two cases. In <u>Ameriguard, Inc., v. University of Kansas Research Institute, Inc.</u>, 2006 WL 1766812 (W.D. Mo. June 23, 2006), the defendant sent a fax announcing the existence of a clinical drug trial and seeking individuals willing to participate. The court held the facsimile did not constitute an advertisement because it did "not announce defendant is providing or otherwise *has available* goods, services, or property." <u>Id.</u> at *1 (emphasis added). Similarly, in <u>Phillips Randolph Enter., LLC v. Adler-Weiner Research Chicago, Inc.</u>, 526 F. Supp. 2d 851 (N.D. Ill. 2007), defendant transmitted a fax inviting recipients to attend a research discussion. The court found the facsimile was not an advertisement because it did not promote a commercially available service. <u>Id.</u> at 853.

In contrast to the facsimiles in Ameriguard and Phillips, "The 'Daily Plan-It'" announces the availability of defendant's services. Recipients could reasonably infer that defendant was offering his estate planning, post mortem administration, and business success planning services for sale, whereas the facsimiles in Ameriguard and Phillips gave no indication on their face that the sender wished to engage in a commercial transaction with the recipient. Plaintiffs in those cases, in other words, had no opportunity to purchase services from defendants. Thus, this court concludes the defendant's "identifying information" is an advertisement under the TCPA.

There is, however, a wrinkle in the instant case because the facsimile also contained a significant amount of editorial, non-advertising content. This brings the court to the question on which the case turns: At what point does advertising in a facsimile newsletter transform the entire facsimile into an "unsolicited advertisement" for purposes of the TCPA? The statute itself offers no explicit guidance about how to classify facsimiles with both editorial and advertising content. See Kenro, Inc. v. Fax Daily, Inc., 962 F. Supp. 1162, 1170 (S.D. Ind. 1997) ("Neither the text of the Act nor its legislative history gives any indication that Congress intended the prohibition to cover only material that is one-hundred percent advertising material; nor is there any guidance with regard to where to draw the line between 'advertisements' and other types of publications, when the publication in question contains both advertising material and news, editorial or other items.")

While the statute's definition of "unsolicited advertisement" could be read as banning even facsimile newsletters with just a smidgen of advertising, the F.C.C. did not adopt this interpretation in its regulations implementing the statute. Instead, the F.C.C. decided that:

> Facsimile communications that contain only information, such as industry news
> articles, legislative updates, or employee benefit information, would not be

>prohibited by the TCPA rules. An *incidental advertisement* contained in a newsletter does not convert the entire communication into an advertisement. Thus, a trade organization's newsletter sent via facsimile would not constitute an unsolicited advertisement, so long as the newsletter's primary purpose is informational, rather than to promote commercial products.

In re Matter of Rules & Regs. Implementing the Tel. Consumer Protection Act of 1991 and the Junk Fax Prevention Act of 2005, 2006 WL 901720, 21 F.C.C.R. 3787, at 3814 (April 6, 2006) (emphasis added).  With regard to what makes an advertisement "incidental," the F.C.C. states in a footnote:

>In determining whether an advertisement is incidental to an informational communication, the Commission will consider, among other factors, whether the advertisement is to a bona fide "informational communication." In determining whether the advertisement is to a *bona fide* "informational communication," the Commission will consider whether the communication is issued on a regular schedule; whether the text of the communication changes from issue to issue; and whether the communication is directed to specific regular recipients, *i.e.,* to paid subscribers or to recipients who have initiated membership in the organization that sends the communication. We may also consider the amount of space devoted to advertising versus the amount of space used for information or "transactional" messages and whether the advertising is on behalf of the sender of the communication, such as an announcement in a membership organization's monthly newsletter about an upcoming conference, or whether the advertising space is sold to and transmitted on behalf of entities other than the sender.

Id. at 3814 n.187.

Unfortunately, the F.C.C. does not suggest what weight each factor should be given in assessing whether a fax is a bona fide informational communication.  But even assuming, *arguendo*, that defendant's facsimile is a bona fide informational communication, the F.C.C. does not enumerate what other factors should be considered in determining whether an advertisement is "incidental."  This court has not found, and the parties did not cite, any case law fleshing out what exactly makes an advertisement "incidental" under the TCPA.

In Kenro, the issue was whether a facsimile newsletter that contained jokes and editorial letters, but that also contained approximately 30 to 50 percent advertising and encouraged readers to advertise in future issues, constituted an advertisement. 962 F. Supp. 1162, 1171 (S.D. Ind. 1997). In denying defendant's motion to dismiss for failure to state a claim, the court stated (at 1171-72):

> We conclude that the allegations of the complaint could reasonably support a conclusion that the Fax Daily publication is, itself an advertisement for its own advertising services, or at least that its primary function is advertising, and that the unrelated editorial content is included for the purpose of evading the prohibitions of the TCPA. An interpretation of the TCPA that excludes from its coverage any publication that is not one-hundred percent advertising material would effectively render the Act's prohibition of unsolicited fax advertisements meaningless, for such an interpretation would allow advertisers to evade the TCPA simply by including items such as jokes, quotes from Shakespeare, or movie reviews, along with their advertisements.

This reasoning applies to the instant case. Defendant's advertisement occupied about 20 to 25 percent of the facsimile – a not insignificant amount of space. Given the absence of F.C.C. guidance and case law about the meaning of "incidental," and drawing all reasonable inferences in the light most favorable to plaintiff, a jury reasonably could conclude that the advertisement was not incidental, and thus that the facsimile taken as a whole violated the TCPA.

## CONCLUSION

For the reasons discussed above, defendant's motion to dismiss is denied.

**ENTER:     June 19, 2008**

**Robert W. Gettleman**
**United States District Judge**

7

# APPENDIX A

Gregory P. Turza   847-674-9115   Page 1 of 1   Thu Nov 01 2007 20:22:56 CDT

Deliver to: Ira Holtzman

# The "Daily Plan-It™"

### GREGORY P. TURZA, JD

Volume 9, Issue 22

11/1/2007

## You *Can* Take it With You: Tips for A Mobile Office

Computers have become such a part of the corporate world, it would be almost impossible to find an organization without one. These days, with people working from home and while traveling, laptops are outselling their larger and bulkier desktop brethren. Most executives have both, although many are using their laptops as their primary computers, thanks to their portability. Here are some practical tips for getting the most out of your laptop, whether you're at the office, at home, or on the road.

### Buying tips

The portable computer is now available at very affordable prices, with low-end models beginning at around $500. The more expensive models are on a par with desktops as far as speed and storage are concerned. When purchasing a laptop, pay attention to the following:

- Stick to name brand manufacturers. Customer support will be more reliable.
- If you plan to use it a lot on the go, find one that's under 5 lbs.
- Look for a model with a spill-resistant keyboard and a shock resistant hard drive.
- Purchase an extended warranty, generally for three years. Even if you have just one problem, it will pay for itself.
- Make sure that the screen is not too small for your eyes, and that the keyboard fits comfortably under your fingertips.
- If you plan to use it at the office and on the go, set up a "docking station" at your desk which would include a keyboard, mouse, and monitor.

### Printing on the go

If you're on the go and need to print important documents, it's not always convenient to find a Kinko's. Purchase a small travel printer which can easily fit in your computer bag. Both Hewlett Packard and Canon have a variety of models that are less than 5 lbs and sell for under $250.00

### Protecting your stuff

Whether you're stationary or on the road, you need to back up your stuff. Purchase a USB flash drive, which is the size of a thumb, and you'll be able to back up and print from any computer.

Take measures to protect your unit from theft. Carry it an inconspicuous case, and never leave it unattended, even for a moment. All information should be protected with a secure password. If you're using it in a hotel room, hide it before you leave. And always back up your data.

Thanks to those measures, you can now take your work anywhere you go. Just don't forget to take some time off, or you may burn out.

ESTATE PLANNING
POST MORTEM ADMINISTRATION
BUSINESS SUCCESSION PLANNING



## Gregory P. Turza
ATTORNEY & COUNSELOR AT LAW



Concourse Plaza
4711 Golf Road
Suite 550
Skokie, Illinois 60076

Telephone: (847) 674-0200
Facsimile: (847) 674-9115
greg@myestateplan.net
www.myestateplan.net

© 2007 GREGORY P. TURZA, JD, Phone: 847-674-0200. All rights reserved.
No portion of this newsletter may be reused in any way without prior express written consent.