## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| IRA HOLTZMAN, C.P.A., & ASSOCIATES LIMITED, individually and as the representative of a class of similarly-situated persons, | ) ) ) ) |
| Plaintiff, | ) Case No.  08 CV 2014 ) |
| v. | ) The Honorable Judge Gettleman ) |
| GREGORY P. TURZA | ) ) |
| Defendant. | ) |

### GREGORY P. TURZA'S MOTION TO DISMISS
### PURSUANT TO FED. R. CIV. PRO. 12(b)(6)

**NOW COMES** Defendant, GREGORY P. TURZA by and through his attorneys, Eric L. Samore and Darren P. Grady of SmithAmundsen LLC, and moves this Court for dismissal of this case pursuant to Federal Rule of Civil Procedure 12(b)(6).  In support, Defendant states as follows:

### I.    FACTUAL & PROCEDURAL BACKGROUND.

This case arises out of Plaintiff's allegations of:  a violation of the Telephone Consumer Protection Act (the "TCPA"), 47 U.S.C. § 227 (Pl.'s Compl. attached hereto as **Exhibit A**.)  This claim fails to state a cause of action because if the TCPA is found to apply to the subject transmission in this case, the TCPA would violate the First Amendment as applied.

Plaintiff avers that on or about November 1, 2007, Defendant transmitted by facsimile an unsolicited advertisement to Plaintiff.  (*See* Exh. A, ¶ 11.)  Plaintiff attached to the Class Action Complaint, as Exhibit A, a copy of the purported facsimile.  (*See id.*)

The subject facsimile is entitled "The Daily Plan-It." (*See* Exhibit A to Exh. A hereto.) Specifically, the subheadings on "The Daily Plan-It" newsletter are: "You *Can* Take it With You: Tips for a Mobile Office," "Buying Tips," "Printing on the Go," and "Protecting your Stuff." (*Id.*)

On April 14, 2008, Defendant Turza filed a Motion to Dismiss Plaintiff's Class Action Complaint pursuant to Fed. R. Civ. Pro 12(b)(6) for the failure to state a claim under the TCPA. Defendant's Motion argued that the subject fax was not an "advertisement" under the TCPA because it contained no advertising of property, goods or services. On June 19, 2008, Judge Gettleman issued an order denying Defendant's Motion to Dismiss, holding that about one quarter of the subject fax could be considered by a reasonable jury to contain non-incidental advertising. (Judge Gettleman's June 19, 2008, Memorandum and Opinion Order attached hereto as **Exhibit B**.) In this same opinion, Judge Gettleman stated that the subject facsimile contains "a significant amount of editorial, non-advertising content" and that this "editorial, non-advertising content" took up about 75 to 80 % of the subject fax. See **Ex. B**. at Pg 5.

If the TCPA is construed to cover the subject facsimile attached to Plaintiff's Class Action Complaint, such an interpretation would violate the First Amendment by infringing upon the right to free speech by Defendant Turza and others. Consequently, the TCPA should be interpreted to not apply to the Newsletter at issue in this case, so as to keep the TCPA from violating the First Amendment, and this Court should dismiss Plaintiff's Class Action Complaint.

## II.    MOTION TO DISMISS STANDARD

This Court is entitled to dismiss Plaintiff's Class Action complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) because Plaintiff cannot state a claim for which relief can be granted if such a claim would make the TCPA unconstitutional as applied to this case.  *See* Fed. R. Civ. Pro. 12(b)(6).  Under Rule 12(b)(6), a complaint can be dismissed for a failure to state a claim on which relief can be granted.  Id.  In order to survive a Rule 12(b)(6) Motion to Dismiss, a complaint must "describe the claim in sufficient detail to give the defendant 'fair notice of what the … claim is and the ground upon which it rests.'" EEOC v. Concentra Health Services, Inc., 496 F.3d 773, 776 (7th Cir. 2007), quoting Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007).  Additionally, the complaint's allegations "must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not the plaintiff pleads itself out of court." Id. at 766.  The "no set of facts" phrase in Conley v. Gibson, 355 U.S. 41 (1957) "is best forgotten as an incomplete, negative gloss on an accepted pleading standard." Bell Atlantic, 127 S Ct at 1970.

In the present matter, this Court has the ability to hold that Plaintiff has no right to relief, pursuant to Rule 12(b)(6), if the relief requested would make the TCPA unconstitutional as applied to this case.  The Northern District has ruled on other Rule 12(b)(6) Motions to Dismiss based on First Amendment challenges in TCPA cases.  *See* Holtzman v. Caplice, 2008 U.S. Dist. LEXIS 41188 (N.D. Ill. May 23, 2008), Centerline Equipment Corp. v. Banner Personnel Service, Inc., 545 F. Supp. 2d 768 (N.D. Ill. March 3, 2008), and Italia Foods, Inc., v. Marinov Enterprises, Inc., 2007 U.S. Dist LEXIS 84913 (N.D. Ill. Nov. 16, 2007).  In the aforementioned cases, the defendants challenged the TCPA on its face, and in each case the Court denied the defendants' Rule 12(b)(6)

Motions to Dismiss. Id. In the present matter, Defendant does not challenge the TCPA on its face, but rather argues that if the TCPA statutory damages provisions of $500 per fax were applied to the subject Newsletter the application would be unconstitutional because it would infringe on Defendant's First Amendment rights, and have the effect of chilling the dissemination of Free Speech.

### III. IF THE TCPA IS CONSTRUED TO EXTEND TO THE SUBJECT NEWSLETTER, THE TCPA WOULD VIOLATE THE FIRST AMENDMENT

#### a. The Newsletter at issue should be afforded the full protection of the First Amendment because it is non-commercial speech

The Newsletter at issue in the present matter falls outside what could be considered "commercial speech" pursuant to established case law. Commercial speech is afforded a lesser protection under the First Amendment than other "constitutionally guaranteed expression." *See* Central Hudson Gas & Electric Corp. v. Public Serv. Commission of NY, 447 US 557, 563, (1980). However, to be subjected to this lower standard of protection, the speech itself must be deemed to be commercial in nature. Id.

The test for designating speech commercial or non-commercial is whether or not the subject speech "propose[s] a commercial transaction." *See* Board of Trustees of the State University of New York v. Fox, 492 US 469, 473-474 (1989), *quoting* Virginia Pharmacy Board v. Virginia Citizens Consumer Counsel, Inc., 425 US 748, 762 (1976), and *citing* Posadas de Puerto Rico Associates v. Tourism Company of Puerto Rico, 478 US 328, 304 (1986).

For example, in Board of Trustees of the State University of New York v. Fox, the subject speech was made during "Tupperware Parties," at which the group hosting the parties displayed their products, but also provided information on fiscal responsibility and

4

"how to run an efficient home." *See* <u>Board of Trustees</u>, at 473-474. The Court held that the "Tupperware Parties" were commercial because they proposed commercial transactions. <u>Id</u>. at 474 – 475.

The fax at issue in the present matter stands in stark contrast to the "Tupperware Parties" at issue in <u>Board of Trustees</u>. (*See* Exhibit A to Exh. A hereto.) As stated above, the subject fax is entitled "The Daily Plan-It" and includes the sub-sections, "You *Can* Take it With You: Tips for a Mobile Office," "Buying Tips," "Printing on the Go," and "Protecting your Stuff." (*Id.*)

Simply looking at Exhibit A, it is apparent that the document at issue is a newsletter or news article that provides information to its recipients. (*Id.*) This document contains no actual proposals for commercial transactions. (*Id.*) The newsletter does not offer anything for sale. (*Id.*) Instead, the document contains information for the readers regarding setting up a mobile office, buying a computer, printing documents "on the go," and protecting documents and computer hardware. (*Id.*) None of this information proposes any sort of commercial transaction whatsoever. Defendant is an attorney and operates a law practice in Skokie, Illinois. There is noting in the fax that indicates Mr. Truza, an estate lawyer, sells mobile office equipment, printers, or computers. The subject fax serves as an informational guide, and it does not propose a commercial transaction between Mr. Turza and the recipient. (*Id.*)

Consequently, the subject fax is non-commercial speech because, pursuant to the test established in <u>Board of Trustees</u> and <u>Virginia Pharmacy</u>, the subject fax does not propose commercial transactions. *See* <u>Board of Trustees of the State University of New York v. Fox</u>, 492 US 469, 473-474 (1989), *quoting* <u>Virginia Pharmacy Board v. Virginia</u>

Citizens Consumer Counsel, Inc., 425 US 748, 762 (1976).  Because the subject fax is non-commercial speech, the test for a statute's constitutionality is not the test laid out in Central Hudson and often cited in other rulings on challenges to the TCPA's constitutionality.  *See* Central Hudson Gas & Electric Corp. v. Public Serv. Commission of NY, 447 US 557, 563, (1980).    Accordingly, the subject non-commercial fax falls under the protection of the First Amendment.

### b. The subject news article must be afforded the full protection of the First Amendment and freedom of speech principals.

The subject fax, containing non-commercial speech, must be afforded the full protection of the First Amendment and freedom of speech principles.    The First Amendment states that "Congress shall make no law . . . abridging the freedom of speech."  *See* U.S. Constitution, First Amendment.    As a result, the TCPA cannot be applied to the fax at issue in this case.    If the TCPA is applied in this case to a fax containing non-commercial speech, the TCPA would be unconstitutional.

As the United States Supreme Court noted in Bartnicki v. Vopper, "The essential thrust of the First Amendment is to prohibit improper restraints on the voluntary public expression of ideas; it shields the man who wants to speak or publish when others wish him to be quiet."  *See* Bartnicki v.Vopper, 523 U.S. 514, 533 (2000), *quoting* Harper & Row v. Nation Enterprises, 471 U.S. 533, 559 (1985).  Further, the Supreme Court has held that the "[f]reedom to distribute information to every citizen wherever he desires to receive it is so clearly vital to the preservation of a free society that . . . it must be fully preserved."  See Martin v. City of Struthers, 391 U.S. 141, 143-144 (1943).

Where commercial speech is offered limited protection by the First Amendment, non-commercial speech is subject to a higher standard of protection.  *See* Ohralik v. Ohio

State Bar Assoc., 436 U.S. 447, 456 (1978).   The Ohralik Court noted that the Supreme

Court had "afforded commercial speech a limited measure of protection, commensurate

with its subordinate position in the scale of First Amendment values, while allowing

modes of regulation that might be impermissible in the realm of noncommercial

expression." Id.   In order to fully preserve the freedom of speech guaranteed to Mr.

Turza and others by the First Amendment, and inhibit any improper restraint on non-

commercial speech, this Court must read the TCPA in a way that it does not apply to the

non-commercial content of the subject fax.   If the statutory damages provisions of the

TCPA are imposed on Defendant, the TCPA would be unconstitutional as applied.

Consequently, the Court should interpret the TCPA, as applied in this case in such a way

as to not infringe on the First Amendment.

Applying the TCPA to this case, which involves clearly non-commercial speech,

would be a violation of the First Amendment.   "[T]he court may not rewrite the

Telephone Consumer Protection Act to enjoin or penalize behavior not prohibited by

Congress." Lutz v. Curry, 859 F. Supp. 180, 182 (E.D. Pa. 1994) (attached hereto as

**Exhibit C**).   Congress enacted the TCPA to be geared, solely, to "material advertising the

*commercial* availability or quality" of products or services. See id. at 181 (emphasis

added.)   As a result, the TCPA cannot be read to enjoin or penalize behavior (free speech)

specifically allowed and protected by the U.S. Constitution.   Here, if the non-commercial

content is found to be subject to the TCPA, this would be contrary to the language of the

TCPA and would inappropriately infringe upon the First Amendment rights afforded to

the Defendant in sending a non-commercial speech.

Imposing the TCPA's statutory damages on non-commercial speech would create a chilling effect on the free exchange of information. Recipients of unsolicited fax advertisements are entitled to damages of $500 per fax for inadvertent, unintended violations of the TCPA, and up to $1,500 per fax for knowing or willful violations, an amount more than 30,000 times the actual cost of receiving a fax, which approximates 10 cents a fax. See 47 U.S.C. § 227(b)(3). Since 1991, this damages scheme has spawned a cottage industry. In some of these TCPA suits, the plaintiffs' class-action bar has sought astonishingly high damages, especially in a case where a broadcasting company is involved. See, e.g., Nicholson v. Hooters of Augusta, Inc., Georgia Superior Court, Richmond County, Civil Action File No. 95-RCCV-616 (awarding $12.9 million).

The imposition of such high statutory damages for the transmission of non-commercial speech would have a chilling effect on defendant and others wishing to transmit non-commercial industry news. In the event that the TCPA reaches the type of editorial, non-commercial speech that is contained in the subject fax, the free dissemination of industry would be less likely to take place because of the potential for statutory damages, grossly disproportional to any actual injury. This would be contrary to the letter and spirit of the First Amendment and the U.S. Constitution. Consequently, the TCPA must be read to not apply to the subject News Article that contains non-commercial speech.

### c. The TCPA was not intended to reach non-commercial communications.

There is a fine, but important distinction between what may be considered an advertisement and what may be considered commercial speech. Concerned with the distribution of unsolicited advertisements via fax, Congress passed the TCPA. In

relevant part, the statute provides: "It shall be unlawful for any person . . . to use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine." 47 U.S.C. § 227(b)(1)(C). The term "unsolicited advertisement" is defined in the statute as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission." 47 U.S.C. § 227(a)(4). Although advertising by definition generally means promoting or publicizing *any* information, commercial or non-commercial, the TCPA prohibits only advertisements containing *commercial* information. 47 U.S.C. § 227(a)(4).

Specifically, as recognized by the Northern District: "Congress' primary purpose in enacting the TCPA was to prevent the shifting of advertising costs to recipients of unsolicited fax advertisements, and therefore *does not apply to other forms of communication transmitted by fax*." *Phillips Randolph Enter., LLC v. Adler-Weiner Research Chicago, Inc.*, 526 F. Supp. 2d 851, 852 (N.D. Ill. 2007). (emphasis added)(citing H.R. Rep. No. 317, at 10, 102d Cong., 1st Sess. 25 (1991); *Destination Ventures, Ltd. v. FCC*, 46 F.3d 54, 56 (9th Cir. 1995); *Kenro, Inc. v. Fax Daily, Inc.*, 962 F. Supp. 1162, 1166, 1170 (S.D. Ind. 1997)). "[M]essages that do not promote a *commercial* product or service . . . are not [un]solicited advertisements under the TCPA." *Id.* (citing *In re the Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 21 F.C.C.R. 3787, at 3810 (April 6, 2006)). More specifically, "facsimile communications that contain only information, such as industry news articles,…would not be prohibited by the TCPA rules." 21 F.C.C.R. at 3814.

This case law, as well as the plain language of the TCPA reveals that the TCPA was intended to reach advertisements that are *commercial* in nature. It is clear that Congress purpose in enacting the TCPA was to reach commercial advertisements, not other forms of non-commercial communications and non-commercial speech that happen to be transmitted by fax. Application of the TCPA to the non-commercial speech transmitted in this matter would be contradictory to the Congressional intent. Consequently, the subject must fall outside the regulation of the TCPA and Plaintiff's Class Action Complaint must be dismissed.

Allowing the Amended Complaint to stand will lead to chilling results contrary to the First Amendment. This would mean, for example, a law firm that faxes its Newsletter about recent judicial decisions of significance, with only its contact information and practice area displayed, would also be subject to the harsh statutory damages of the TCPA The exchange of important industry news would be diminished and inhibited by such interpretation of the TCPA.

## IV.    CONCLUSION

Defendant does not contend that the TCPA is an unconstitutional statute. Defendant merely makes the argument that if the TCPA is applied to non-commercial Newsletter at issue here, that application would be unconstitutional, outside the intent of Congress, and outside the purview of the TCPA. This Honorable Court should interpret the TCPA so it does not apply to the non-commercial speech at issue in this case, and so it does not create a chilling effect on the free exchange of speech and information. As a result, Plaintiff's Class Action Complaint should be dismissed.

**WHEREFORE**, Defendant, GREGORY P. TURZA prays that this Honorable Court enter an order granting dismissal with prejudice of Plaintiff's Class Action Complaint in Defendant's favor and for such other relief as this Court deems just and proper.

Respectfully Submitted,
SMITHAMUNDSEN, LLC


By: ___/s/___   Darren P. Grady_____
                One of the Attorneys for
                Gregory P. Turza

Eric L. Samore, ARDC # 6181345
Darren P. Grady ARDC #6289608
SmithAmundsen LLC
150 North Michigan Avenue, Suite 3300
Chicago, Illinois 60601
(312) 894-3200

# EXHIBIT A

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

IRA HOLTZMAN, individually and as the )
representative of a class of similarly-situated )
persons, )   **07CH32741**
)
              Plaintiff, )
)   No.
      v. )
)
GREGORY P. TURZA, )
)
            Defendant. )

### CLASS ACTION COMPLAINT

Plaintiff, IRA HOLTZMAN ("Plaintiff"), brings this action on behalf of himself and all

other persons similarly situated, through his attorneys, and except as to those allegations

pertaining to Plaintiff or his attorneys, which allegations are based upon personal knowledge,

alleges the following upon information and belief against Defendant, GREGORY P. TURZA.

### PRELIMINARY STATEMENT

1.      This case challenges Defendant's practice of faxing unsolicited advertisements.

2.      The federal Telephone Consumer Protection Act, 47 USC § 227, prohibits a

person or entity from faxing or having an agent fax advertisements without the recipient's prior

express invitation or permission ("junk faxes" or "unsolicited faxes"). The TCPA provides a

private right of action and provides statutory damages of $500 per violation.

3.      Unsolicited faxes damage their recipients. A junk fax recipient loses the use of its

fax machine, paper, and ink toner. An unsolicited fax wastes the recipient's valuable time that

would have been spent on something else. A junk fax interrupts the recipient's privacy.

Unsolicited faxes prevent fax machines from receiving authorized faxes, prevent their use for

authorized outgoing faxes, cause undue wear and tear on the recipients' fax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited message.

4.    On behalf of himself and all others similarly situated, Plaintiff brings this case as a class action asserting claims against Defendant under the TCPA, the common law of conversion, and the consumer protection statutes forbidding and compensating unfair business practices.

5.    Plaintiff seeks an award of statutory damages for each violation of the TCPA.

### JURISDICTION AND VENUE

6.    Jurisdiction is conferred by 735 ILCS 5/2-209 in that Defendant has transacted business and committed tortious acts related to the matters complained of herein.

7.    Venue is proper in Cook County pursuant to 735 ILCS 5/2-101, et seq. because some of the tortious acts complained of occurred in Cook County, Illinois.

8.    Federal jurisdiction does not exist because no federal question or claim is asserted and Plaintiffs' individual claims are worth less than $75,000.00, inclusive of all forms of damages and fees.  Plaintiff expressly disclaims any individual recovery in excess of $75,000.00, inclusive of all forms of damages and fees.

### PARTIES

9.    Plaintiff is a resident of Cook County, Illinois.

10.    On information and belief, Defendant, GREGORY P. TURZA, operates a law practice in Skokie, Illinois.

### FACTS

11.    On or about November 1, 2007, Defendant faxed an advertisement to Plaintiff.  A copy of the facsimile is attached hereto as Exhibit A.

2

12.    Plaintiff had not invited or given permission to Defendant to send fax advertisements.

13.    On information and belief, Defendant faxed the same and similar advertisements to Plaintiff and more than 39 other recipients without first receiving the recipients' express permission or invitation.

14.    There is no reasonable means for Plaintiff (or any other class member) to avoid receiving illegal faxes. Fax machines are left on and ready to receive the urgent communications their owners desire to receive.

**COUNT I**
**TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227**

15.    Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

16.    In accordance with 735 ILCS 5/2-801, Plaintiff brings Count I pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227, on behalf of the following class of persons:

> All persons who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability of any property, goods, or services by or on behalf of Defendant, (3) with respect to whom Defendant did not have prior express permission or invitation for the sending of such faxes, and (4) with whom Defendant did not have an established business relationship.

17.    A class action is warranted because:

(a)    On information and belief, the class includes forty or more persons and is so numerous that joinder of all members is impracticable.

(b)    There are questions of fact or law common to the class predominating over questions affecting only individual class members, including without limitation:

(i)    Whether Defendant sent unsolicited fax advertisements;

3

(ii)    Whether Defendant's facsimiles advertised the commercial availability of property, goods, or services;

(iii)    The manner and method Defendant used to compile or obtain the list of fax numbers to which it sent Exhibit A and other unsolicited faxed advertisements;

(iv)    Whether Defendant faxed advertisements without first obtaining the recipients' express permission or invitation;

(v)    Whether Defendant violated the provisions of 47 USC § 227;

(vi)    Whether Plaintiff and the other class members are entitled to statutory damages;

(vii)    Whether Defendant should be enjoined from faxing advertisements in the future; and

(viii)    Whether the Court should award trebled damages.

18.    Plaintiff will fairly and adequately protect the interests of the other class members. Plaintiff's counsel are experienced in handling class actions and claims involving unsolicited advertising faxes. Neither Plaintiff nor Plaintiff's counsel has any interests adverse or in conflict with the absent class members.

19.    A class action is an appropriate method for adjudicating this controversy fairly and efficiently. The interest of each individual class member in controlling the prosecution of separate claims is small and individual actions are not economically feasible.

20.    The TCPA prohibits the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine...." 47 U.S.C. § 227(b)(1).

4

21.    The TCPA defines "unsolicited advertisement," as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's express invitation or permission." 47 U.S.C. § 227(a)(4).

22.    The TCPA provides:

3.    Private right of action. A person may, if otherwise permitted by the laws or rules of court of a state, bring in an appropriate court of that state:

(A)    An action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

(B)    An action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or

(C)    Both such actions.

23.    The Court, in its discretion, can treble the statutory damages if the violation was knowing. 47 U.S.C. § 227.

24.    Defendant violated the 47 U.S.C. § 227 et seq. by sending advertising faxes (such as Exhibit A) to Plaintiff and the other members of the class without first obtaining their prior express invitation or permission.

25.    The TCPA is a strict liability statute and Defendant is liable to Plaintiff and the other class members even if its actions were only negligent.

26.    Defendant knew or should have known that Plaintiff and the other class members had not given express invitation or permission for Defendant or anybody else to fax advertisements about Defendant's goods or services.

27.    Defendant's actions caused damages to Plaintiff and the other class members. Receiving Defendant's junk faxes caused the recipients to lose paper and toner consumed in the

printing of Defendant's faxes. Moreover, Defendant's faxes used Plaintiff's fax machine. Defendant's faxes cost Plaintiff time, as Plaintiff and its employees wasted their time receiving, reviewing and routing Defendant's illegal faxes. That time otherwise would have been spent on Plaintiff's business activities. Finally, Defendant's faxes unlawfully interrupted Plaintiff's and the other class members' privacy interests in being left alone.

28.    Even if Defendant did not intend to cause damage to Plaintiff and the other class members, did not intend to violate their privacy, and did not intend to waste the recipients' valuable time with Defendant's advertisements, those facts are irrelevant because the TCPA is a strict liability statute.

WHEREFORE, Plaintiff, IRA HOLTZMAN, individually and on behalf of all others similarly situated, demands judgment in his favor and against Defendant, GREGORY P. TURZA, as follows:

A.    That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B.    That the Court award $500.00 in damages for each violation of the TCPA;

C.    That the Court enter an injunction prohibiting Defendant from engaging in the statutory violations at issue in this action; and

D.    That the Court award costs and such further relief as the Court may deem just and proper, but in any event, not more than $75,000.00 per individual, inclusive of all damages and fees.

<b>COUNT II<br>CONVERSION</b>

29.    Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

6

30.     In accordance with 735 ILCS 5/2-801, Plaintiff brings Count II for conversion under the common law for the following class of persons:

> All persons (1) who on or after a date five years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability of any property, goods or services by or on behalf of Defendant, (3) with respect to whom Defendant did not have prior express permission or invitation for the sending of such faxes, and (4) with whom Defendant did not have an established business relationship.

31.     A class action is proper in that:

(a)     On information and belief the class consists of forty or more persons and is so numerous that joinder of all members is impracticable.

(b)     There are questions of fact or law common to the class predominating over all questions affecting only individual class members, including:

(i)     Whether Defendant engaged in a pattern of sending unsolicited fax advertisements;

(ii)    The manner and method Defendant used to compile or obtain the list of fax numbers to which it sent Exhibit A and other unsolicited faxed advertisements; and

(iii)   Whether Defendant committed the tort of conversion.

32.     Plaintiff will fairly and adequately protect the interests of the other class members. Plaintiff has retained counsel who is experienced in handling class actions and claims involving unlawful business practices. Neither Plaintiff nor Plaintiff's counsel have any interests adverse or in conflict with the class.

7

33.     A class action is an appropriate method for adjudicating this controversy fairly and efficiently. The interest of the individual class members in individually controlling the prosecution of separate claims is small and individual actions are not economically feasible.

34.     By sending Plaintiff and the other class members unsolicited faxes, Defendant improperly and unlawfully converted their fax machines, toner and paper to its own use. Defendant also converted Plaintiff's employees' time to Defendant's own use.

35.     Immediately prior to the sending of the unsolicited faxes, Plaintiff and the other class members owned an unqualified and immediate right to possession of their fax machines, paper, toner, and employee time.

36.     By sending the unsolicited faxes, Defendant permanently misappropriated the class members' fax machines, toner, paper, and employee time to Defendant's own use. Such misappropriation was wrongful and without authorization.

37.     Defendant knew or should have known that its misappropriation of paper, toner, and employee time was wrongful and without authorization.

38.     Plaintiff and the other class members were deprived of the use of the fax machines, paper, toner, and employee time, which could no longer be used for any other purpose. Plaintiff and each class member thereby suffered damages as a result of their receipt of unsolicited fax advertisements from Defendant.

39.     Each of Defendant's unsolicited fax advertisements effectively stole Plaintiff's employees' time because multiple persons employed by Plaintiff were involved in receiving, routing, and reviewing Defendant's illegal faxes. Defendant knew or should have known employees' time is valuable to Plaintiff.

8

40. Defendant's actions caused damages to Plaintiff and the other members of the class because their receipt of Defendant's unsolicited fax advertisements caused them to lose paper and toner as a result. Defendant's actions prevented Plaintiff's fax machines from being used for Plaintiff's business purposes during the time Defendant was using Plaintiff's fax machines for Defendant's illegal purpose. Defendant's actions also cost Plaintiff employee time, as Plaintiff's employees used their time receiving, routing, and reviewing Defendant's illegal faxes, and that time otherwise would have been spent on Plaintiff's business activities.

WHEREFORE, Plaintiff, IRA HOLTZMAN, individually and on behalf of all others similarly situated, demands judgment in his favor and against Defendant, GREGORY P. TURZA, as follows:

A. That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff counsel as counsel for the class;

B. That the Court award appropriate damages;

C. That the Court award costs of suit; and

D. Awarding such further relief as the Court may deem just and proper, but in any event, not more than $75,000.00 to any individual class member.

## COUNT III
## ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT
### 815 ILCS 505/2

41. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

42. In accordance with 735 ILCS 5/2-801, Plaintiff, on behalf of the following class of persons, bring Count III for Defendant's unfair practice of sending unsolicited and unlawful fax advertisements:

9

All persons in Illinois who (1) on or after a date three years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability of any property, goods, or services by or on behalf of Defendant, (3) with respect to whom Defendant did not have prior express permission or invitation for the sending of such faxes, and (4) with whom Defendant did not have an established business relationship.

43.    A class action is proper in that:

(a)    On information and belief the class consists of thousands of persons in Illinois and throughout the United States and is so numerous that joinder of all members is impracticable.

(b)    There are questions of fact or law common to the class predominating over all questions affecting only individual class members including:

(i)    Whether Defendant engaged in a pattern of sending unsolicited fax advertisements;

(ii)    The manner and method Defendant used to compile or obtain the list of fax numbers to which it sent Exhibit A and other unsolicited faxed advertisements;

(iii)    Whether Defendant's practice of sending unsolicited faxed advertisements violates Illinois public policy;

(iv)    Whether Defendant's practice of sending unsolicited faxes is an unfair practice under the Consumer Fraud Act; and

(v)    Whether Defendant should be enjoined from sending unsolicited fax advertising in the future.

44.    Plaintiff will fairly and adequately protect the interests of the other class members. Plaintiff has retained counsel who are experienced in handling class actions and

10

claims involving lawful business practices. Neither Plaintiff nor Plaintiff's counsel have any interests adverse or in conflict with the class.

45.     A class action is an appropriate method for adjudicating this controversy fairly and efficiently. The interest of the individual class members in individually controlling the prosecution of separate claims is small and individual actions are not economically feasible.

46.     Defendant's unsolicited fax practice is an unfair practice, because it violates public policy, and because it forced Plaintiff and the other class members to incur expense without any consideration in return. Defendant's practice effectively forced Plaintiff and the other class members to pay for Defendant's advertising campaign.

47.     Defendant violated the unfairness predicate of the Act by engaging in an unscrupulous business practice and by violating Illinois statutory public policy, which public policy violations in the aggregate caused substantial injury to hundreds of persons.

48.     Defendant's misconduct caused damages to Plaintiff and the other members of the class, including the loss of paper, toner, ink, use of their facsimile machines, and use of their employees' time.

49.     Defendant's actions caused damages to Plaintiff and the other class members because their receipt of Defendant's unsolicited fax advertisements caused them to lose paper and toner consumed as a result. Defendant's actions prevented Plaintiff's fax machine from being used for Plaintiff's business purposes during the time Defendant was using Plaintiff's fax machine for Defendant's illegal purpose. Defendant's actions also cost Plaintiff employee time, as Plaintiff's employees used their time receiving, routing, and reviewing Defendant's illegal faxes and that time otherwise would have been spent on Plaintiff's business activities.

WHEREFORE, Plaintiff, IRA HOLTZMAN, individually and on behalf of all others similarly situated, demands judgment in his favor and against Defendant, GREGORY P. TURZA, as follows:

A.    That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the class representative, and appoint Plaintiff's counsel as counsel for the class;

B.    That the Court award damages to Plaintiff and the other class members;

C.    That the Court award attorney fees and costs;

D.    That the Court enter an injunction prohibiting Defendant from sending unsolicited faxed advertisements to Illinois consumers; and

E.    Awarding such further relief as the Court may deem just and proper, but in any event, not more than $75,000.00 to any individual member.

Respectfully submitted,

IRA HOLTZMAN, individually and as the representative of a class of similarly-situated persons

By:    _____
       One of Plaintiff's Attorneys

Brian J. Wanca                        Phillip A. Bock
ANDERSON + WANCA                      DIAB & BOCK, LLC
3701 Algonquin Road, Suite 760        134 N. LaSalle Street, Suite 1000
Rolling Meadows, IL  60008            Chicago, IL  60602
Telephone: 847/368-1500               Telephone:  312/658-5500
Attorney No. 51306                    Attorney No. 42073

**EXHIBIT A**

Gregory P. Turza    847-674-9115        Page 1 of 1        Thu Nov 01 2007 20:22:56 CDT

Deliver to: Ira Holtzman

# The "Daily Plan-It™"

### GREGORY P. TURZA, JD

Volume 9, Issue 22

11/1/2007

## You *Can* Take it With You:
## Tips for A Mobile Office

Computers have become such a part of the corporate world, it would be almost impossible to find an organization without one. These days, with people working from home and while traveling, laptops are outselling their larger and bulkier desktop brethren. Most executives have both, although many are using their laptops as their primary computers, thanks to their portability. Here are some practical tips for getting the most out of your laptop, whether you're at the office, at home, or on the road.

### Buying tips

The portable computer is now available at very affordable prices, with low-end models beginning at around $500. The more expensive models are on a par with desktops as far as speed and storage are concerned. When purchasing a laptop, pay attention to the following:

• Stick to name brand manufacturers. Customer support will be more reliable.
• If you plan to use it a lot on the go, find one that's under 5 lbs.
• Look for a model with a spill-resistant keyboard and a shock resistant hard drive.
• Purchase an extended warranty, generally for three years. Even if you have just one problem, it will pay for itself.
• Make sure that the screen is not too small for your eyes, and that the keyboard fits comfortably under your fingertips.
• If you plan to use it at the office and on the go, set up a "docking station" at your desk which would include a keyboard, mouse, and monitor.

### Printing on the go

If you're on the go and need to print important documents, it's not always convenient to find a Kinko's. Purchase a small travel printer which can easily fit in your computer bag. Both Hewlett Packard and Canon have a variety of models that are less than 5 lbs and sell for under $250.00

### Protecting your stuff

Whether you're stationary or on the road, you need to back up your stuff. Purchase a USB flash drive, which is the size of a thumb, and you'll be able to back up and print from any computer.

Take measures to protect your unit from theft. Carry it an inconspicuous case, and never leave it unattended, even for a moment. All information should be protected with a secure password. If you're using it in a hotel room, hide it before you leave. And always back up your data.

Thanks to these measures, you can now take your work anywhere you go. Just don't forget to take some time off, or you may burn out.



ESTATE PLANNING
POST MORTEM ADMINISTRATION
BUSINESS SUCCESSION PLANNING

## Gregory P. Turza
ATTORNEY & COUNSELOR AT LAW



Concourse Plaza
4711 Golf Road
Suite 550
Skokie, Illinois 60076

Telephone: (847) 674-0200
Facsimile: (847) 674-9115
greg@myestateplan.net
www.myestateplan.net

© 2007 GREGORY P. TURZA, JD, Phone: 847-674-0200. All rights reserved.
No portion of this newsletter may be reused in any way without prior express written consent.

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IRA HOLTZMAN, individually and as the representative of a class of similarly situated persons, | ) ) ) ) | |
| Plaintiff, | ) | No. 08 C 2014 |
| v. | ) ) | Judge Robert W. Gettleman |
| GREGORY P. TURZA, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ira Holtzman has sued defendant Gregory P. Turza for sending him by facsimile

("fax") an unsolicited advertisement in violation of the federal Telephone Consumer Protection

Act ("TCPA"), 47 U.S.C. §227. Turza has moved to dismiss the claim under Fed. R. Civ. P.

12(b)(6) for failure to state a claim. For the reasons discussed below, defendant's motion is

denied.

## BACKGROUND

Defendant is an attorney who operates a law practice in Skokie, Illinois. In November

2007, he had a one-page newsletter sent to plaintiff by fax. The plaintiff, who had never given

defendant permission to do this, objected and filed suit. Given that the content of the facsimile is

a central issue in this case, it is worthwhile to describe it in detail.[1] At the top of the page is the

name of the newsletter, "The 'Daily Plan-It.'" These words are italicized, bolded, and

underlined. Just below them, it states "Gregory P. Turza, JD," along with the date and volume

and issue numbers. The design calls to mind a newspaper masthead. Beneath this "masthead,"

---

[1]A copy of the fax is attached as Appendix A.

the facsimile is divided into two columns, which contain an editorial article offering advice

about using computers. The lead headline states, "You *Can* Take it with You: Tips for A Mobile

Office," and the text explains how to purchase a laptop, print documents "on the go," and protect

data and computer hardware. This article runs the length of the left column and concludes in the

middle of the right column. What appears in the remainder of the right column forms the crucial

issue in this lawsuit. At the end of the article, in the lower right corner, defendant provides his

name (in a font larger than any other type on the page, with the exception of "The 'Daily Plan-

It'"), identifies himself as an attorney, and includes the words "estate planning," "post mortem

administration," and "business succession planning" before his name. The fax also includes a

logo, a photo of the building in which defendant has his office, his business address, telephone

and fax numbers, e-mail address, and Web site. At the bottom of the fax defendant repeats his

name and phone number. This "identifying information" occupies approximately 20 to 25

percent of the fax.

## DISCUSSION

Defendant has moved to dismiss the complaint for failure to state a claim under Fed. R.

Civ. P. 12(b)(6). The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint,

not decide the merits. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). Federal

notice pleading "requires only a short and plain statement of the claim showing that the pleader

is entitled to relief." Erickson v. Pardus, __ U.S. __, 127 S.Ct. 2197, 2200 (2007) (citing Bell

Atlantic Corp. v. Twombly, __ U.S. __, 127 S.Ct. 1955 (2007)). The court must accept all well-

pleaded factual allegations in the complaint as true and draw all reasonable inferences in the

light most favorable to plaintiff. Moranski v. Gen. Motors Corp., 433 F.3d 537, 539 (7th Cir.

2

2005).  Because the facsimile at issue is attached to the complaint, it is considered part of the

complaint.  See id. (citing Fed. R. Civ. P. (10(c)).  Dismissal under Rule 12(b)(6) is appropriate

if the plaintiff can prove no set of facts to support his claim.  First Ins. Funding Corp. v. Fed. Ins.

Co., 284 F.3d 799, 804 (7th Cir. 2002).

Plaintiff alleges that defendant violated the TCPA by faxing him an unsolicited

advertisement.  Defendant has moved to dismiss, arguing the fax is a newsletter and not an

advertisement.  Under the TCPA, it is unlawful to send an unsolicited advertisement to a

telephone facsimile machine.  47 U.S.C. § 227 (b)(1)(C).  The statute defines an unsolicited

advertisement as "any material advertising the commercial availability or quality of any

property, goods, or services which is transmitted to any person without that person's prior

express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5).  The TCPA,

however, permits unsolicited facsimiles that do not promote a commercial product or service.

See Phillips Randolph Enter., LLC v. Adler-Weiner Research Chicago, Inc., 526 F. Supp. 2d

851, 852 (N.D. Ill. 2007) (citing In re Matter of Rules & Regs. Implementing the Tel. Consumer

Protection Act of 1991 and the Junk Fax Prevention Act of 2005, 2006 WL 901720, 21 F.C.C.R.

3787, at 3810 (April 6, 2006)).  Because the parties agree that plaintiff did not invite or grant

permission for defendant to send the facsimile, the sole issue is whether the facsimile is an

advertisement under the TCPA.

According to defendant, the facsimile is an informational guide offering computer advice

from a lawyer's perspective.  He argues the inclusion of his contact information was merely

meant to identify the author, not promote his services.  There is some merit to this argument

because the facsimile resembles a newsletter and includes headlines and editorial content.  On

3

the other hand, it is hard to escape the conclusion that the facsimile performs *some* advertising function. The statute's plain text does not require the facsimile to propose a sale, but merely just advertise the "commercial availability" of defendant's services. While the facsimile at issue may not make a direct, overt sales pitch to its recipients, at the very least it had the effect of informing them that defendant was an attorney who did work in estate planning, post mortem administration, and business succession planning. From there, a recipient would likely have inferred that defendant's services were commercially available and could be obtained by contacting the defendant at his office, by phone or fax, or through e-mail. To view it another way, if defendant had sent a facsimile that contained only his identifying information, it clearly would have been an advertisement. The inclusion of unrelated editorial content does not somehow insulate the "identifying information" from being labeled an advertisement.

Defendant primarily relies on two cases in arguing the identifying information, and thus the fax, should not be viewed as an advertisement. The defendant's publication, however, is fundamentally different from the facsimiles at issue in the two cases. In Ameriguard, Inc., v. University of Kansas Research Institute, Inc., 2006 WL 1766812 (W.D. Mo. June 23, 2006), the defendant sent a fax announcing the existence of a clinical drug trial and seeking individuals willing to participate. The court held the facsimile did not constitute an advertisement because it did "not announce defendant is providing or otherwise *has available* goods, services, or property." Id. at *1 (emphasis added). Similarly, in Phillips Randolph Enter., LLC v. Adler-Weiner Research Chicago, Inc., 526 F. Supp. 2d 851 (N.D. Ill. 2007), defendant transmitted a fax inviting recipients to attend a research discussion. The court found the facsimile was not an advertisement because it did not promote a commercially available service. Id. at 853.

4

In contrast to the facsimiles in <u>Ameriguard</u> and <u>Phillips</u>, "The 'Daily Plan-It'" announces the availability of defendant's services. Recipients could reasonably infer that defendant was offering his estate planning, post mortem administration, and business success planning services for sale, whereas the facsimiles in <u>Ameriguard</u> and <u>Phillips</u> gave no indication on their face that the sender wished to engage in a commercial transaction with the recipient. Plaintiffs in those cases, in other words, had no opportunity to purchase services from defendants. Thus, this court concludes the defendant's "identifying information" is an advertisement under the TCPA.

There is, however, a wrinkle in the instant case because the facsimile also contained a significant amount of editorial, non-advertising content. This brings the court to the question on which the case turns: At what point does advertising in a facsimile newsletter transform the entire facsimile into an "unsolicited advertisement" for purposes of the TCPA? The statute itself offers no explicit guidance about how to classify facsimiles with both editorial and advertising content. See <u>Kenro, Inc. v. Fax Daily, Inc.</u>, 962 F. Supp. 1162, 1170 (S.D. Ind. 1997) ("Neither the text of the Act nor its legislative history gives any indication that Congress intended the prohibition to cover only material that is one-hundred percent advertising material; nor is there any guidance with regard to where to draw the line between 'advertisements' and other types of publications, when the publication in question contains both advertising material and news, editorial or other items.")

While the statute's definition of "unsolicited advertisement" could be read as banning even facsimile newsletters with just a smidgen of advertising, the F.C.C. did not adopt this interpretation in its regulations implementing the statute. Instead, the F.C.C. decided that:

> Facsimile communications that contain only information, such as industry news articles, legislative updates, or employee benefit information, would not be

5

prohibited by the TCPA rules. An *incidental advertisement* contained in a newsletter does not convert the entire communication into an advertisement. Thus, a trade organization's newsletter sent via facsimile would not constitute an unsolicited advertisement, so long as the newsletter's primary purpose is informational, rather than to promote commercial products.

In re Matter of Rules & Regs. Implementing the Tel. Consumer Protection Act of 1991 and the

Junk Fax Prevention Act of 2005, 2006 WL 901720, 21 F.C.C.R. 3787, at 3814 (April 6, 2006)

(emphasis added). With regard to what makes an advertisement "incidental," the F.C.C. states in

a footnote:

> In determining whether an advertisement is incidental to an informational communication, the Commission will consider, among other factors, whether the advertisement is to a bona fide "informational communication." In determining whether the advertisement is to a *bona fide* "informational communication," the Commission will consider whether the communication is issued on a regular schedule; whether the text of the communication changes from issue to issue; and whether the communication is directed to specific regular recipients, *i.e.,* to paid subscribers or to recipients who have initiated membership in the organization that sends the communication. We may also consider the amount of space devoted to advertising versus the amount of space used for information or "transactional" messages and whether the advertising is on behalf of the sender of the communication, such as an announcement in a membership organization's monthly newsletter about an upcoming conference, or whether the advertising space is sold to and transmitted on behalf of entities other than the sender.

Id. at 3814 n.187.

Unfortunately, the F.C.C. does not suggest what weight each factor should be given in

assessing whether a fax is a bona fide informational communication. But even assuming,

*arguendo*, that defendant's facsimile is a bona fide informational communication, the F.C.C.

does not enumerate what other factors should be considered in determining whether an

advertisement is "incidental." This court has not found, and the parties did not cite, any case law

fleshing out what exactly makes an advertisement "incidental" under the TCPA.

In <u>Kenro</u>, the issue was whether a facsimile newsletter that contained jokes and editorial letters, but that also contained approximately 30 to 50 percent advertising and encouraged readers to advertise in future issues, constituted an advertisement. 962 F. Supp. 1162, 1171 (S.D. Ind. 1997). In denying defendant's motion to dismiss for failure to state a claim, the court stated (at 1171-72):

> We conclude that the allegations of the complaint could reasonably support a conclusion that the Fax Daily publication is, itself an advertisement for its own advertising services, or at least that its primary function is advertising, and that the unrelated editorial content is included for the purpose of evading the prohibitions of the TCPA. An interpretation of the TCPA that excludes from its coverage any publication that is not one-hundred percent advertising material would effectively render the Act's prohibition of unsolicited fax advertisements meaningless, for such an interpretation would allow advertisers to evade the TCPA simply by including items such as jokes, quotes from Shakespeare, or movie reviews, along with their advertisements.

This reasoning applies to the instant case. Defendant's advertisement occupied about 20 to 25 percent of the facsimile – a not insignificant amount of space. Given the absence of F.C.C. guidance and case law about the meaning of "incidental," and drawing all reasonable inferences in the light most favorable to plaintiff, a jury reasonably could conclude that the advertisement was not incidental, and thus that the facsimile taken as a whole violated the TCPA.

## CONCLUSION

For the reasons discussed above, defendant's motion to dismiss is denied.

**ENTER:**    **June 19, 2008**

Robert W. Gettleman
**United States District Judge**

7

# APPENDIX A

Deliver to: Ira Holtzman

# The "Daily Plan-It™"

### *GREGORY P. TURZA, JD*

Volume 8, Issue 22

11/1/2007

### You *Can* Take it With You: Tips for A Mobile Office

Computers have become such a part of the corporate world, it would be almost impossible to find an organization without one. These days, with people working from home and while traveling, laptops are outselling their larger and bulkier desktop brethren. Most executives have both, although many are using their laptops as their primary computers, thanks to their portability. Here are some practical tips for getting the most out of your laptop, whether you're at the office, at home, or on the road.

### Buying tips

The portable computer is now available at very affordable prices, with low-end models beginning at around $500. The more expensive models are on a par with desktops as far as speed and storage are concerned. When purchasing a laptop, pay attention to the following:

* Stick to name brand manufacturers. Customer support will be more reliable.
* If you plan to use it a lot on the go, find one that's under 5 lbs.
* Look for a model with a spill-resistant keyboard and a shock resistant hard drive.
* Purchase an extended warranty, generally for three years. Even if you have just one problem, it will pay for itself.
* Make sure that the screen is not too small for your eyes, and that the keyboard fits comfortably under your fingertips.
* If you plan to use it at the office and on the go, set up a "docking station" at your desk which would include a keyboard, mouse, and monitor.

### Printing on the go

If you're on the go and need to print important documents, it's not always convenient to find a Kinko's. Purchase a small travel printer which can easily fit in your computer bag. Both Hewlett

Packard and Canon have a variety of models that are less than 5 lbs and sell for under $250.00

### Protecting your stuff

Whether you're stationary or on the road, you need to back up your stuff. Purchase a USB flash drive, which is the size of a thumb, and you'll be able to back up and print from any computer.

Take measures to protect your unit from theft. Carry it in an inconspicuous case, and never leave it unattended, even for a moment. All information should be protected with a secure password. If you're using it in a hotel room, hide it before you leave. And always back up your data.

Thanks to those measures, you can now take your work anywhere you go. Just don't forget to take some time off, or you may burn out.

ESTATE PLANNING
POST MORTEM ADMINISTRATION
BUSINESS SUCCESSION PLANNING



## Gregory P. Turza

ATTORNEY & COUNSELOR AT LAW



Concourse Plaza
4711 Golf Road
Suite 550
Skokie, Illinois 60076

Telephone: (847) 674-0200
Facsimile: (847) 674-9115
gmp@myestateplan.net
www.myestateplan.net

© 2007 GREGORY P. TURZA, JD, Phone: 847-674-0200. All rights reserved.
No portion of this newsletter may be reused in any way without prior express written consent.

# EXHIBIT C

Get a Document - by Citation - 859 F. Supp. 180

Case 1:08-cv-02014-PP Document 37-4    Filed 09/10/2008    Page 2 of 5

Page 1 of 4

LexisNexis® *Total Research System*

Switch Client ┊ Preferences ┊ Sign Out ┊ ? Help

Search ┊ Research Tasks ┊ Get a Document ┊ *Shepard's®* ┊ Alerts ┊ Total Litigator ┊ Transactional Advisor ┊ Counsel Selector

Service: **Get by LEXSEE®**
Citation: **859 F. Supp 180**

*859 F. Supp. 180, \*; 1994 U.S. Dist. LEXIS 10413, \*\*;*
*76 Rad. Reg. 2d (P & F) 919*

LUTZ APPELLATE SERVICES, INC. v. RODNEY CURRY, et al.

CIVIL ACTION No. 94-3985

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

859 F. Supp. 180; 1994 U.S. Dist. LEXIS 10413; 76 Rad. Reg. 2d (P & F) 919

July 28, 1994, Decided
July 28, 1994, Filed, Entered

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff company filed an action against defendant ex-employees under the Telephone Consumer Protection Act of 1991 ("Act"), 47 U.S.C.S. § 227 for sending unsolicited faxes to the company. The ex-employees filed a motion to dismiss for failure to state a claim for relief under Fed. R. Civ. P. 12(b)(6).

**OVERVIEW:** The ex-employees sent faxes to the company announcing that jobs were available. The company alleged that the ex-employees were attempting to hire away the company's employees and that the faxes were unsolicited advertisements prohibited by the Telephone Consumer Protection Act of 1991, 47 U.S.C.S. § 227. The ex-employees contended that the faxed messages did not fall within the statutory definition of unsolicited advertisements because they advertised employment opportunities, not property, goods or services. The company claimed that employment was property and that to offer employment, as the ex-employees did, was to offer property. The court held that the ex-employee's transmitted messages were not unsolicited material advertising the commercial availability or quality of any property, goods or services within the ordinary meaning of those words of the Telephone Consumer Protection Act. Id.

**OUTCOME:** The court granted the ex-employee's request to dismiss the company' complaint for failure to state a claim.

**CORE TERMS:** unsolicited, advertisement, machine, facsimile, telephone, messages, failure to state a claim, fax, ordinary meaning, individually, solicitation, advertising, transmitted, trading, hiring, faxed, hire

## LEXISNEXIS® HEADNOTES                                    ⊟ **Hide**

Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims ⬑ALL
Civil Procedure > Dismissals > Involuntary Dismissals > Failures to State Claims ⬑ALL
Civil Procedure > Pretrial Judgments > Judgment on the Pleadings ⬑ALL
*HN1* ⬥ A complaint should be dismissed for failure to state a claim only where it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. All well pleaded factual allegations in the complaint are assumed to be true and are viewed in the light most favorable to the plaintiff.  More Like This Headnote

Get a Document - by Citation - 859 F. Supp. 180
Case 1:08-cv-02014 PP Document 37-4     Filed 09/10/2008     Page 3 of 5
Page 2 of 4

Communications Law > Privacy > Telephone Consumer Protection Act 🗐
HN2 ♣ See the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227(b).

Communications Law > Privacy > Telephone Consumer Protection Act 🗐
HN3 ♣ The Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227(a)(4), defines an "unsolicited advertisement" as any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission.  More Like This Headnote | _Shepardize:_ Restrict By Headnote

**COUNSEL:** **[**1]** FOR LUTZ APPELLATE SERVICES, INC., PLAINTIFF: LESLIE WEISSE, RUBIN, SHAPIRO & WEISSE, PHILA., PA.

FOR RODNEY CURRY, DOUGLAS TAYLOR, individually & t/a CURRY & TAYLOR, DEFENDANTS: CRAIG B. SOBEL, PHILA, PA.

**JUDGES:** Bartle, III

**OPINION BY:** HARVEY BARTLE, III

 **OPINION**


 **[*181]** _MEMORANDUM_

Bartle, J.

As new technology emerges, the appearance of related legal issues seems never to be far behind. This is such a case. It concerns the prohibitions on the use of the now ubiquitous facsimile ("fax") machine under the Telephone Consumer Protection Act of 1991 ("Act"), 47 U.S.C. § 227.

Plaintiff, Lutz Appellate Services, Inc., filed the present action against a former employee, Rodney Curry, and his business partner, Douglas Taylor, individually and trading as Curry & Taylor. Plaintiff seeks damages for two alleged violations of the Act. The case is currently before the court on defendants' motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

HN1 ♣ A complaint should be dismissed for failure to state a claim only where "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." _Hishon v. King & Spalding_, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984). All well pleaded factual allegations in the complaint **[**2]** are assumed to be true and are viewed in the light most favorable to the plaintiff. _Jenkins v. McKeithen_, 395 U.S. 411, 421, 23 L. Ed. 2d 404, 89 S. Ct. 1843 (1969).

Plaintiff's complaint alleges that on two occasions, defendants faxed unsolicited messages to Lutz Appellate Services. The first of these messages reads as follows:

 **CURRY & TAYLOR**

 **IS NOW HIRING**

 **ALL POSITIONS**

 **CALL TODAY 1-800-222-8738**

The second states:

CURRY & TAYLOR

### -APPELLATE SPECIALISTS NEEDED

### -GENEROUS PAY STRUCTURE

### -EXPERIENCE WELCOME BUT NOT NECESSARY

### -CALL 1-800-409-0060 TODAY, ASK FOR BILL

Plaintiff contends that these solicitations from a business competitor seeking to hire away plaintiff's current employees are "unsolicited advertisements" prohibited by 47 U.S.C. § 227.

*HN2* Section 227(b) states that "it shall be unlawful for any person within the United States … to use any telephone facsimile machine … to send an unsolicited advertisement to a telephone facsimile machine …." 47 U.S.C. § 227(b). *HN3* The statute defines an "unsolicited advertisement" **[**3]** as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission." 47 U.S.C. § 227(a)(4).

Defendants argue that the faxed messages do not fall within the statutory definition of "unsolicited advertisements" because they advertise employment opportunities, not defendants' property, goods or services. Plaintiff, however, claims that "employment is property" and that "to offer employment, as Defendants have done, is to offer property."

Plaintiff's position is without merit. A company's advertisement of available job opportunities within its ranks is not the advertisement of the commercial availability of property. Unless the context indicates otherwise, the words of a statute must be interpreted in accordance with their ordinary meaning. *United States v. Knox*, No. 92-7089, 1994 U.S. App. LEXIS 13919 (3d Cir. June 9, 1994). When, for example, an employer places a "help wanted" ad, no one speaks or thinks of it as a property solicitation or an offer of property. Likewise, when an employer **[**4]** hires an employee, no one characterizes the hiring as a property sale, exchange or transaction. Here, the defendants did nothing more than send a "help wanted" ad on two occasions over the plaintiff's fax machine. These transmitted messages are not unsolicited "material advertising the commercial **[*182]** availability or quality of any property, goods or services" within the ordinary meaning of those words of the Act. See 47 U.S.C. § 227(a)(4).

Plaintiff contends that "the whole import of the Act is to avoid the abuse of, *inter alia*, facsimile machines to foist unwanted information or communications to [sic] those who do not want it." That, of course, is the purpose of this Act as far as it goes. However, Congress clearly did not prohibit fax transmissions of all unsolicited information or communications, and there is some question whether it could do so constitutionally. ¹ *See generally City of Cincinnati v. Discovery Network*, 123 L. Ed. 2d 99, 113 S. Ct. 1505 (1993); *Destination Ventures, Ltd. v. F.C.C.*, 844 F. Supp. 632 (D. Or. 1994); *Lysaght v. State of New Jersey*, 837 F. Supp. 646 (D. N.J. 1993). **[**5]**

### FOOTNOTES

₁ None of the parties here has raised the issue of the constitutionality of the Act.

Plaintiff's redress, if any, lies elsewhere. No matter how sympathetic plaintiff's case may be, the court may not rewrite the Telephone Consumer Protection Act to enjoin or penalize behavior not prohibited by Congress. Plaintiff's complaint will be dismissed for failure to state a claim upon which relief can be granted.

*ORDER*

AND NOW, this 28th day of July, 1994, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that the motion of defendants, Rodney Curry and Douglas Taylor, individually and trading as Curry & Taylor, to dismiss plaintiff's complaint under Rule 12(b)(6) of the Federal Rules of Civil

Procedure is GRANTED.

BY THE COURT:

Harvey Bartle, III, J.


Service:   **Get by LEXSEE®**
Citation:  **859 F. Supp 180**
View:    Full
Date/Time: Wednesday, September 10, 2008 - 2:23 PM EDT

* Signal Legend:
🔴 -  Warning: Negative treatment is indicated
🅀 -  Questioned: Validity questioned by citing refs
⚠ -  Caution: Possible negative treatment
◆ -  Positive treatment is indicated
🅐 -  Citing Refs. With Analysis Available
🅘 -  Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.


Search | Research Tasks | Get a Document | *Shepard's®* | Alerts | Total Litigator | Transactional Advisor | Counsel Selector
History | Delivery Manager | Dossier | Switch Client | Preferences | Sign Out | Help

 LexisNexis®   About LexisNexis | Terms & Conditions | Contact Us
Copyright © 2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.