IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IRA HOLTZMAN, individually and as the representative of a class of similarly situated persons,<br><br>        Plaintiff,<br>   v.<br><br>GREGORY P. TURZA,<br><br>        Defendant. | No. 08 C 2014<br><br>Judge Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Ira Holtzman C.P.A. & Associates Limited ("Holtzman"), represents a certified class of individuals in an action against Gregory P. Turza ("Turza"), in which class plaintiffs claim that defendant violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, by sending them one or more unsolicited advertisements by fax. The plaintiff class as defined in the court's order of October 14, 2009, and clarified on November 5, 2009, Holtzman v. Turza, 2009 WL 3334909 (N.D. Ill. Oct. 14, 2009), is composed of:

> All persons who: (1) during the period September 2006 through March 2008; (2) received a "Daily Plan-It" fax identifying "Gregory P. Turza" and his telephone number (847-647-0200) or e-mail address (greg@myestateplan.net); and (3) had not previously consented to receiving such advertisements.

The parties have filed cross-motions for summary judgment. For the reasons discussed below, the motions are granted in part and denied in part.

## FACTUAL BACKGROUND

In considering a motion for summary judgment, the court draws "all reasonable inferences from undisputed facts in favor of the nonmoving party and [views] the disputed evidence in the light most favorable to the nonmoving party." Harney v. Speedway

SuperAmerica, LLC, 526 F.3d 1099, 1104 (7th Cir. 2008). The following facts are taken from the complaint and from the parties' statements of facts and accompanying exhibits as to which there is no material dispute.

Defendant is an attorney who operates a law practice in Skokie, Illinois. In August 2006, he hired Top of Mind Solutions, LLC ("Top of Mind") to create and distribute by fax and email one-page documents titled the "Daily Plan-It" to a list of persons supplied by defendant. Defendant's target list included a combination of contact information he purchased from the Illinois CPA Society and numbers he obtained from business contacts and students.

Top of Mind issued 41 versions of the Daily Plan-It on defendant's behalf, every two weeks, from August 2006 to March 2008. All 41 versions include a masthead with the words "The 'Daily Plan-It'" in italicized, bolded, and underlined text. "Gregory P. Turza, JD" appears just below the masthead along with the date, volume and issue number of the document. Beneath this title, the page is divided into two columns that contain an editorial article offering advice about various topics. Each article runs the length of the left column of the page and concludes in the middle of the right column. A copy of a representative "Daily Plan-It" is attached to this court's June 19, 2008, opinion denying defendant's motion to dismiss.[1]

The content of each Daily Plan-It was created entirely by Steven Patrick Riley ("Riley"), Top of Mind's owner. Defendant did not contribute to the editorial content. At the end of each article, in the lower right corner, defendant's name is listed (in a font larger than any other type on the page, with the exception of "The 'Daily Plan-It'"). He is identified as an attorney and counselor at law, and the words "estate planning," "post mortem administration," and "business

---

[1] Holtzman v. Turza, 2008 WL 2510182 (N.D. Ill. June 19, 2008).

succession planning" appear before his name.  Each fax also includes two or three graphic images: defendant's business logo, a photo of the building in which defendant has his office, or a head shot of defendant.  Also included are his business address, telephone and fax numbers, e-mail address, and website address.  At the bottom of the fax the document repeats defendant's name and phone number.  This "identifying information" occupies approximately 20 to 25 percent of total area of the fax.

Plaintiffs seek summary judgement in the amount of $4,215,000 in statutory damages – $500 for each of the 8,430 times defendant successfully sent the Daily Plan-It to one of the class member's fax machines.

## DISCUSSION

**I.  Legal Standard**

The parties have filed cross motions for summary judgment pursuant to Fed. R. Civ. P. 56.  Summary judgment is appropriate if the evidence demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); Village Church v. Village of Long Grove, 468 F.3d 975, 988 (7th Cir. 2006).  The burden is on the moving party to identify portions of the pleadings, answers to interrogatories, and affidavits that demonstrate an absence of material fact.  See Celotex, 477 U.S. at 323 (1986).  The burden then shifts to the nonmoving  party to "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).  When reviewing a summary judgment motion, the court must read the facts in the light most favorable to the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  The court's role "is

not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." Doe v. R.R. Donnelley & Sons Co., 42 F.3d 439, 443 (7th Cir. 1994).

## II. TCPA

The TCPA prohibits the use of "any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C).[2] It also creates a private right of action whereby the recipient of an unsolicited fax may bring an action to "recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater." 47 U.S.C. § 227(b)(3)(B). To prevail on a claim under the TCPA, a plaintiff must show that defendant: "(1) used a telephone facsimile machine, computer or other device to send a facsimile; (2) the facsimile was unsolicited; and (3) the facsimile constituted an advertisement." Hinman v. M and M Rental Center, Inc., 545 F. Supp. 2d 802, 805 (N.D. Ill. 2008). The TCPA defines an unsolicited advertisement as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5).

This court has previously found in its memorandum opinion and order of June 19, 2008 (the "June 19 Order"), that the quarter page of the Daily Plan-It that detailed defendant's

---

[2] There are exceptions to this general prohibition. Under the TCPA, a sender may fax an unsolicited advertisement to a recipient with whom she has an established business relationship and to fax numbers that she obtained either voluntarily, within the context of an established business relationship, or from "a directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution." 47 U.S.C. § 227(b)(1)(C).

4

identifying information is an advertisement under the TCPA.[3]  At issue here is whether each Daily Plan-It sent on defendant's behalf, considered in its entirety, constituted an unsolicited advertisement for the purposes of the TCPA.  The crucial question is whether the editorial, non-advertising content of the fax made the advertising content "incidental" to the rest of the document.  Defendant argues that according to regulations promulgated by the Federal Communication Commission ("FCC"), the Daily Plan-It is not an "advertisement" within the meaning of the TCPA.  He further argues that recent case law has found that documents comparable to the Daily Plan-It are not advertisements within the meaning of the TCPA.  Plaintiffs counter that the faxes were advertisements under the plain language and the FCC's interpretation of the TCPA.

The FCC's interpretation of the TCPA, while not binding on the court, provides helpful guidance on determining the nature of a fax:

> [F]acsimile communications that contain only information, such as industry news articles, legislative updates, or employee benefit information, would not be prohibited by the TCPA rules.  An *incidental advertisement* contained in a newsletter does not convert the entire communication into an advertisement.  Thus, a trade organization's newsletter sent via facsimile would not constitute an unsolicited advertisement, so long as the newsletter's primary purpose is informational, rather than to promote commercial products. [The Commission emphasizes] that a newsletter format used to advertise products or services will not protect a sender from liability for delivery of an unsolicited advertisement under the TCPA and the Commission's rules.

In re Matter of Rules & Regs. Implementing the Tel. Consumer Protection Act of 1991 and the Junk Fax Prevention Act of 2005, 2006 WL 901720, 21 F.C.C.R. 3787, at 3814-15 (Apr. 6,

---

[3]Holtzman, 2008 WL 2510182.

2006) (emphasis added). With regard to what makes an advertisement "incidental," the FCC states in a footnote:

> In determining whether an advertisement is incidental to an informational communication, the Commission will consider, among other factors, whether the advertisement is to a bona fide "informational communication." In determining whether the advertisement is to a *bona fide* "informational communication," the Commission will consider whether the communication is issued on a regular schedule; whether the text of the communication changes from issue to issue; and whether the communication is directed to specific regular recipients, *i.e.,* to paid subscribers or to recipients who have initiated membership in the organization that sends the communication. We may also consider the amount of space devoted to advertising versus the amount of space used for information or "transactional" messages and whether the advertising is on behalf of the sender of the communication, such as an announcement in a membership organization's monthly newsletter about an upcoming conference, or whether the advertising space is sold to and transmitted on behalf of entities other than the sender.

Id. at 3814 n.187.

As the court noted in its June 19 Order denying defendant's motion to dismiss, the FCC does not suggest what weight each factor should be given in assessing whether a fax is a bona fide informational communication or what other factors should be considered in determining whether an advertisement is "incidental."

### III. Analysis of Fax Communication

Analyzing the fax using the FCC's method, the court finds that each of the Daily Plan-Its sent on defendant's behalf were advertisements. Defendant does not dispute that Top of Mind specializes in referral based marketing, and the Daily Plan-It is a tool used to develop relationships and build Top of Mind's clients' law practices. Despite defendant's arguments to the contrary, the record is replete with evidence demonstrating that the primary purpose of defendant's agreement with Top of Mind was to generate awareness of defendant's services and

6

build his client base.  Defendant does not dispute that the fax was designed to portray the editorial content as being authored by him, whereas in fact it was stock text generated by Top of Mind for its clients, and defendant had no role in creating or editing the content.  As the FCC has emphasized, the newsletter format of the Daily Plan-It does not insulate defendant from liability.  If defendant's primary purpose was informational or educational, he has provided nothing to credibly support this fact.

It is of no moment that defendant and Riley deny that Top of Mind engaged in advertising as opposed to "marketing," that the topics covered in the Daily Plan-It may have been of interest to some of the recipients, or that defendant claimed his Top of Mind expenses as educational on his tax filings.  The bottom-line is that defendant has provided no facts to show that his genuine, primary motivation in paying Top of Mind to distribute the Daily Plan-It was to educate CPAs and his business contacts on various industry-related topics rather than to build brand recognition and solicit business referrals for his law practice.

Even if there was a genuine material dispute about defendant's purpose in commissioning the faxes, additional analysis using the FCC's factors for evaluating the incidental nature of the advertising content of the faxes demonstrate that the Daily Plan-Its were not bonafide "informational communications."  Two of the FCC's factors weigh in favor of defendant's position: (1) it is beyond dispute that the Daily Plan-Its were sent on a regular, twice monthly schedule; and (2) the editorial content changed from issue-to-issue.  The remaining factors weigh in favor of plaintiffs.  First, the fax recipients were not "specific regular recipients," because they were neither paid subscribers nor had they initiated membership with defendant to receive the faxes.  Second, an examination of the 41 faxes shows that defendant's identifying information

7

comprised slightly more than 25 percent of the page of each Daily Plan-It. The inclusion of graphics, the prominent font size, and the repetition of defendant's name, diminish the fact that the number of words in the remaining 75 percent of each page greatly exceed those in the portion of the page containing the identifying information. Finally, the faxes, although appearing to be sent by defendant on his own behalf, were sent by Top of Mind as part of a paid marketing campaign. As mentioned above, the FCC has not provided guidance on the relative weight to assign each of these factors or the other factors it considers in determining if a fax communication is incidental.[4] Considering the factors in their totality coupled with the defendant's commercial purpose, the court concludes that uncontested facts establish that the Daily Plan-It was not an "informational communication," but rather "an unsolicited advertisement" within the meaning of the TCPA. For these reasons, the court grants summary judgment in plaintiffs' favor on this issue.

**IV. Opt-out Notice**

Under the TCPA, a sender may fax an unsolicited advertisement to a recipient with whom she has an established business relationship and to fax numbers that she obtained either voluntarily, within the context of an established business relationship, or from "a directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available

---

[4]Moreover, the case law cited by both parties is not particularly helpful. There is no binding precedent on this issue, and although other courts have used the FCC factors to evaluate the contents of fax communications, none of those communications closely resemble the Daily Plan-It. See G.M. Sign, Inc. v. MFG.com, Inc., 2009 WL 1137751, *2 (N.D. Ill. Apr. 24, 2009); Sadowski v. OCO Biomedical, Inc., 2008 WL 5082992, *2 (N.D. Ill. Nov. 25, 2008); Green v. Time Ins. Co., 629 F. Supp. 2d 834, 837 (N.D. Ill. 2009); Holmes v. Back Doctors, Ltd., 2010 U.S. Dist LEXIS 23887, *13-14 (S.D. Ill. Mar. 12, 2010); Stern v. Bluestone, 12 N.Y.3d 873, 876 (N.Y. 2009).

its facsimile number for public distribution." 47 U.S.C. § 227(b)(1)(C). Defendant argues that there is a question of fact regarding whether some of the faxes were unsolicited because many of the potential recipients were his current and former business associates and students. Plaintiffs contend that because defendant failed to comply with the TCPA's "opt-out notice" requirement, all of the faxes qualify as unsolicited advertisements regardless of the nature of the relationship between defendant and each the recipient.

47 U.S.C. §§ 227(b)(1)(C)(iii) and (b)(2)(D) require that all fax advertisements include a clear and conspicuous opt-out notice informing a recipient that she can request that the sender not transmit any future unsolicited fax advertisements. Section 227(b)(1)(C)(iii) of the TCPA provides that:

> It shall be unlawful for a person within the United States, or any person outside of the United States if the recipient is within the United States...to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement, unless...the unsolicited advertisement contains a notice meeting the requirements under paragraph (2)(D).

The notice must include a 24-hour toll free telephone number, and a request must be complied with within the shortest reasonable time.

It is undisputed that none of the 41 Daily Plan-Its, which the court has already found to be unsolicited advertisements, included such a notice. Consequently, defendant is liable for every fax received by the plaintiff class regardless of whether he had an established business relationship with any of the recipients. For these reasons, the court grants summary judgment in plaintiffs' favor on this issue.

**V. Mitigation of Damages**

Defendant argues that, despite having many opportunities and methods to contact him and request to be removed from his contact list, the uncontested facts show that plaintiffs failed to mitigate their damages, and that the court should bar class members from recovering damages for more than two faxes. Nonsense. Mitigation of damages is not a defense under the TCPA, and each instance of a violation is independently actionable. See Fed. Comm. Comm'n, In re 21st Century Fax(es), Ltd., Enforcement Action Letter, Case No. EB-00-TC-)) (March 8, 2000) ("Faxing even an advertisement . . . constitutes a violation of the TCPA . . .. Recipients of unsolicited facsimile advertisements are not required to ask that senders stop transmitting such materials."); see also State ex rel. Charvat v. Frye, 114 Ohio St. 3d 76, 80 (Ohio 2007). Because defendant has offered no case law or FCC recommendations to support a contrary conclusion, the court rejects this argument as a matter of law and will not limit recovery to plaintiffs based on failure to mitigate damages.

## VI. Proof of Receipt of Faxes

The outstanding issue that cannot be resolved on summary judgment is proof of receipt of the faxes. The definition of the class is limited to "persons who . . . received a 'Daily Plan-It' fax . . .", and there are a host of disputed material facts related to this issue.

What is undisputed is that Top of Mind contracted with MessageVision ("MessageVision"), a fax broadcasting service, to fax the newsletters using defendant's contact list. MessageVision used a proprietary fax software program that was internally developed by the company. The record, however, does not describe who developed the fax software, how it worked, or whether and what kinds of quality control tests were ever conducted to determine the accuracy of the program.

Plaintiffs argue that the transmission reports provided by Top of Mind and MessageVision establish that 11,945 faxes were sent. Of these, 8,630 were successfully transmitted to 221 unique fax numbers. Defendant contends that not only does this data not establish receipt of the faxes, but that the data itself is fundamentally flawed because plaintiffs have failed to establish the integrity of the fax transmission reports or lay a proper foundation for establishing their accuracy. Both parties have submitted the reports of experts to support their positions. Because there is a genuine issue of material fact in dispute regarding proof of receipt of the fax transmissions, the court declines to grant summary judgment for either party on this issue.

## **CONCLUSION**

For the reasons stated above, the court grants plaintiffs' motion for summary judgment finding that, (a) the 41 Daily Plan-It faxes are advertisements as defined under the TCPA, and (b) defendant is liable for all of the faxes received by the target list. Defendant's motion for summary judgment on the issue of mitigation of damages is denied. The court denies summary judgment for either party of the issue of how many faxes were actually received by plaintiffs.

This matter is set for a report on status August 25, 2010, at 9:00 a.m.

**ENTER:** **August 3, 2010**

_____
**Robert W. Gettleman**
**United States District Judge**