IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IRA HOLTZMAN, C.P.A, & ASSOCIATES LIMITED, individually and as the representative of a class of similarly situated persons, | ) ) ) ) ) | |
| Plaintiff, | ) | No. 08 C 2014 |
| v. | ) ) | Judge Robert W. Gettleman |
| GREGORY P. TURZA, | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Ira Holtzman C.P.A. & Associates Limited represents a certified class of individuals in an action against Gregory P. Turza, in which class plaintiffs claim that defendant violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, by faxing them unsolicited advertisements. The plaintiff class, as defined in the court's order dated October 14, 2009, and clarified on November 5, 2009, Holtzman v. Turza, 2009 WL 3334909 (N.D. Ill. Oct. 14, 2009), comprises:

> All persons who: (1) during the period September 2006 through March 2008; (2) received a "Daily Plan-It" fax identifying "Gregory P. Turza" and his telephone number (847-647-0200) or e-mail address (greg@myestateplan.net); and (3) had not previously consented to receiving such advertisements.

On August 3, 2010, the court granted in part and denied in part the parties' cross-motions for summary judgment. Specifically, the court denied defendant's motion for summary judgment on the issue of mitigation, and granted plaintiff's motion on two issues, finding that: (1) the "Daily Plan-It" faxes are advertisements under the TCPA; and (2) defendant is liable for all faxes

received by the target list. The remaining factual issue was the number of faxes plaintiffs received.

In an attempt to resolve that lone outstanding issue, plaintiff has filed a second motion for summary judgment. In responding to that motion, defendant offered the affidavit of David Canfield, which plaintiff promptly moved to strike as untimely. At that time, defendant also filed a motion to decertify the class. For the following reasons, the court grants plaintiff's second motion for summary judgment, denies as moot plaintiff's motion to strike, and denies defendant's motion to decertify the class.

## DISCUSSION

**Plaintiff's Second Motion for Summary Judgment and Plaintiff's Motion to Strike**

The court will not repeat most of the undisputed facts, which it has discussed at length in its earlier opinion granting in part and denying in part the parties' previous cross-motions for summary judgment, Holtzman v. Turza, No. 08 C 2014, 2010 WL 4177150 (N.D. Ill. Oct. 19, 2010), and which in any event are largely irrelevant to the instant motions. One exception is that, as the court found in ruling on the parties' cross-motions for summary judgment, it is undisputed that MessageVision, a fax broadcasting service, was hired to fax defendant's "Daily Plan-It" advertisements using defendant's contact list. Other pertinent undisputed facts mentioned throughout the opinion are derived from the parties' L.R. 56.1 statements submitted in connection with plaintiff's second summary judgment motion.

As mentioned above, after the court ruled on the parties' previous cross-motions for summary judgment, the remaining factual question was receipt of the faxes. In support of its first summary judgment motion, plaintiff had offered MessageVision and Top of Mind

transmission reports showing that 11,945 faxes were sent, and that 8,630 of these were successfully transmitted to 221 unique fax numbers. Defendant argued that plaintiff had failed to lay a proper foundation to establish the integrity of those fax transmission reports. At that time, the court declined to grant summary judgment for either party on the issue of whether the faxes were received.

To allow the parties to attempt to resolve that outstanding issue, the court reopened discovery and permitted limited additional depositions. Plaintiff deposed Michael Richard, the Chief Financial Officer ("CFO") of MessageVision's parent company,[1] whom MessageVision produced in response to plaintiff's Rule 30(b)(6) request for the person "most knowledgeable about . . . the fax broadcasting software used by MessageVision." Richard's resulting testimony describes in detail the technology (the T.30 protocol, the "industry standard technology . . . that's been around for 30 years"), the hardware (the Avaya APX 1000, also an industry standard product), and the software (MessageVision's proprietary software) that MessageVision used to send defendant's faxes. Richard testified that all of those elements were reliably functioning during the relevant time period.

Richard's testimony adequately establishes a foundation for his knowledge that the faxes were received. Specifically, Richard explained that "[o]nce the [fax] transaction is concluded, the APX 1000 then reports the transaction back to [MessageVision's] proprietary software," at which point it "goes into a database, and that's how [MessageVision] reports [its] billing." Richard testified that, as CFO, he was responsible for billing MessageVision's clients, and thus

---

[1] Michael Richard is the CFO of VillageEDocs, which has four subsidiaries, including MessageVision.

was in a position to know if there were any problems with fax transmission or billing—which he testified there were not. Finally, Richard testified that when the T.30 protocol is used, a fax cannot be reported as delivered unless the receiving machine reports back that the entire fax has been successfully received. This testimony supports plaintiff's factual contention that MessageVision's records of successful fax transmissions are accurate and reliable, thereby showing that the class members received the faxes at issue.

Defendant disagrees, despite the fact that defendant's transmitting service, and defendant himself, relied on the until-now unquestioned integrity of MessageVision's system to compute the number of successful fax receipts that resulted in the charges paid by defendant. He argues that because Richard's expertise is finance, not technology, his testimony regarding MessageVision's fax technology is untrustworthy and cannot be considered as evidence that the class members received the faxes. Although defendant questions Richard's lack of technical expertise, Richard is offered not as an expert witness, but as a fact witness who testified about standard operating procedure. Richard testified that he familiarized himself with the relevant hardware and software, including by speaking with MessageVision employees to acquire additional information and understanding of the hardware and software. As mentioned above, Richard also testified that, as CFO, he personally supervised the billing of clients, including defendant, based on successfully transmitted faxes. As plaintiff points out, Richard would have known if any clients complained of unsuccessful fax transmissions, which they did not. Because he was supervising the fax transmission business, his testimony that MessageVision's systems were working is competent.

4

Defendant further attacks Richard's credibility by claiming that his testimony reveals his failure to understand the intricacies of fax technology. These critiques are frivolous. For example, defendant claims Richard's credibility is undermined by his allegedly inaccurate testimony that: (1) MessageVision used only the T.30 protocol; and (2) a device such as MessageVision's that uses the T.38 protocol cannot use the T.30 protocol. Even if defendant is correct that Richard's testimony reflects his limited comprehension of fax technology—a proposition that appears to be dubious at best—defendant's argument is contradicted by the fact that his own expert admits that T.38 converts to T.30 when a fax is sent using APX 1000. Defendant also claims that "there are now additional, individual fact questions over whether the Newsletters were transmitted to class members as faxes in violation of the TCPA or whether they were transmitted as email, which is not covered by the Act." This argument, however, is contradicted by the undisputed fact that all the ads were sent to telephone numbers rather than email addresses.

Because plaintiff has met its burden of pointing out the absence of a disputed factual issue, it is defendant's burden to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(c). But defendant has presented no evidence that conflicts with Richard's testimony on whether the faxes were received, and defendant cannot satisfy his burden by asking the court to "evaluate the weight of the evidence" that plaintiff has offered in efforts to discredit Richard's technical expertise. Doe v. R.R. Donnelly & Sons, Co., 42 F.3d 439, 443 (7th Cir. 1994).

In an unsuccessful attempt to manufacture a collateral disputed issue of material fact, defendant filed, along with his opposition to plaintiff's second motion for summary judgment, a

5

new affidavit by his expert, David Canfield. This affidavit outlines Canfield's concerns regarding what defendant describes as "the continued lack of understanding by Richard as to how MessageVision's system functions." Plaintiff has moved to strike Canfield's affidavit, contending that it is untimely because it cannot be construed as a Rule 26 supplement or as a "harmless" or "substantially justified" submission under Rule 37. Defendant responds that plaintiff's arguments are irrelevant because the Canfield affidavit is properly submitted as a Rule 56(c) expert counter-affidavit to contradict the erroneous testimony of a Rule 30(b)(6) witness. Even if defendant is correct that the affidavit is not untimely, however, Canfield's affidavit does not offer any facts regarding whether the faxes at issue were received by the class members. It thus cannot help him avoid summary judgment on that question. Thus, because defendant has failed to offer evidence suggesting that the faxes were not received—for example, evidence that MessageVision's fax delivery system ever reported a false positive or was otherwise unreliable—defendant has failed to establish a disputed issue of material fact on whether the class members received the faxes.

Finally, defendant attempts to avoid summary judgment by claiming that plaintiff has failed to demonstrate the absence of disputed facts on two other issues: whether the class members consented to receiving the faxes, and whether they owned the machines to which the faxes were sent. But the court had good reason when it previously held that the only remaining factual issue was receipt of the faxes. First, there is no disputed material issue of fact as to whether some class members consented to receiving the faxes. Defendant has testified that he did not obtain consent to send any of the faxes at issue, and he has not provided any evidence that any class member gave him permission to send a fax or that he maintained an established

6

business relationship with any class member. No evidence contradicts that testimony. Second, the issue of ownership of the fax machines does not affect the court's ruling—although, as plaintiff notes, it may require class members to offer proof of ownership before they can collect their share of the judgment.

For the foregoing reasons, the court grants plaintiff's motion for summary judgment, awarding plaintiff $500 in statutory damages for each of the 8,430 times defendant successfully sent the Daily Plan-It fax to one of the class member's fax machines, for a total of total of $4,215,000.

**Defendant's Motion to Decertify the Class**

Roughly concurrent with his response to plaintiff's second motion for summary judgment, defendant moved to decertify the class that the court certified on October 14, 2009, and clarified on November 5, 2009. Although he did not contest superiority at the class certification stage, defendant now contends that the class does not meet Rule 23(b)(3)'s requirement that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy" because 88 percent of the class has at least $10,000 in individual claims, giving them sufficient incentive to pursue their own lawsuits (which are easily handled in small claims court without need for counsel). Defendant further claims that the total amount of statutory damages he faces—$4.3 million—contravenes the due process clause because it would bankrupt him and exceed any actual harm he caused. Neither of these arguments is availing, and the court therefore declines to decertify the class.

The first prong of defendant's decertification argument—what defendant describes as his "main argument"—relies on a myopic reading of Rule 23(b)(3). Defendant claims that, in this

7

case, the class action device is not superior to individual lawsuits because most of the class members have "sufficient incentive and means to bring viable individual actions." But, even if 88 percent of class members have claims for $10,000 or more, and even if the court concluded that this was a sufficient sum to encourage those class members to pursue their claims individually, that would not mean that a class action would be less fair or efficient than individual litigation. On the contrary, "suits seeking statutory damages are arguably best suited to the class device because individual proof of actual damages is unnecessary." Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 130 S. Ct. 1431, 1465 (2010) (Ginsburg, J., dissenting) (emphasis in original). While class members' ability and incentive to pursue individual lawsuits is relevant to the superiority inquiry, it is not the only factor. Here, defendant does not argue—because he cannot argue—that a class action is not more efficient and fair than individual litigation.

     Defendant's second, related argument fares no better. He protests that allowing a class action to proceed will result in the imposition of constitutionally excessive statutory damages, but that argument is, as plaintiff notes, precluded by Murray v. GMAC Mortgage Corp., 434 F.3d 938, 953-54 (7th Cir. 2006), in which the Seventh Circuit held that it was improper to deny class certification because aggregated statutory damages might be excessive. Defendant attempts to distinguish Murray by arguing that it addressed a situation in which class members would recover only small sums, while the large majority of class members in the instant case are entitled to at least $10,000. But defendant fails to acknowledge that "[t]he Due Process clause does not require Congress 'to make illegal behavior affordable, particularly for multiple violations,'" Centerline Equipment Corp. v. Banner Personnel Serv., Inc., 545 F. Supp. 2d 768,

777 (N.D. Ill. 2008) (quoting Phillips Randolph Enters., LLC v. Rice Fields, 06 C 4968, 2007 WL 129052, at **2-3 (N.D. Ill. Jan. 11, 2007), and advances no argument that the statutory damages at issue here are so far excessive as to be constitutionally impermissible. Regardless, even if defendant had presented a persuasive argument, class decertification would not be an appropriate remedy. See Murray, 434 F.3d at 954 (stating that, if a district court were concerned that a class action would impose unconstitutionally excessive damages, the only possible appropriate response was to reduce the award, not deny class certification).

Moreover, plaintiff makes another point, which defendant does not dispute, that casts doubt on a central premise of defendant's arguments in favor of decertification: that the size of the judgment in this case will force him to declare bankruptcy. As plaintiff explains, defendant has insurance policies covering the time period when his fax advertisements were sent to the class. The policies had annual, amended liability limits of $2,000,000, doubled to $4,000,000 for aggregate liability arising from advertising injuries or property damages caused by illegal faxes. Under Illinois law (which governs the insurance coverage), defendant's policies cover the TCPA claims at issue in this case. Valley Forge Ins. Co. v. Swiderski Elec., Inc., 860 N.E.2d 307, 317-18 (Ill. 2006); Ins. Corp. of Hanover v. Shelborne Assocs., 905 N.E.2d 976, 985 (Ill. App. Ct. 2009). Thus, it appears that at least most of the $4.3 million will not come from defendant's own pocket, making it unclear why defendant would be forced to declare bankruptcy. Because defendant has failed to deny that he has applicable insurance coverage, the court will assume that he concurs with plaintiff's analysis.

Finally, defendant requests that, if the court does not decertify the class, it preemptively limit statutory damages to "recoverable proceeds from Defendant's insurance policies." As

9

plaintiff mentions, defendant has cited to no case in which a court has limited damages to insurance proceeds, and has advanced no persuasive argument for this court to forge new ground. The court therefore denies defendant's request.

## **CONCLUSION**

For the reasons stated above, the court grants plaintiffs' second motion for summary judgment and enters summary judgment in favor of the class in the amount of $4,215,000: $500 in statutory damages for each of the 8,430 times defendant successfully sent the Daily Plan-It fax to one of the class member's fax machines. Defendant's motion to decertify the class is denied, and plaintiff's motion to strike the affidavit of David Canfield is denied as moot. This matter is set for a status report on September 12, 2011, at 9:30 a.m., at which time counsel for the plaintiff class is directed to inform the court concerning distribution to the class, their petition for attorneys' fees, and all other matters necessary to bring this action to a conclusion.

**ENTER:** August 29, 2011

_____
**Robert W. Gettleman**
**United States District Judge**